Filed 7/30/19; Modified and Certified for Publication 8/28/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JASMINE LOPEZ,<br><br>   Plaintiff and Respondent,<br><br>     v.<br><br>BARTLETT CARE CENTER, LLC, et al.,<br><br>   Defendants and Appellants. | G056249<br><br>(Super. Ct. No. 30-2018-00965892)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre and Mason T. Smith for Defendants and Appellants.

Valentine Law Group, Kimberly A. Valentine, Jennifer L. Turner and Joseph F. Fighera for Plaintiff and Respondent.

\*       \*       \*

Defendant, a 24-hour skilled nursing facility, appeals from the order denying its petition to compel arbitration of claims asserting negligent or willful misconduct, elder abuse, and wrongful death filed against it by decedent's daughter as successor in interest and individually. The trial court found the successor claims were not arbitrable because no arbitration agreement existed between decedent and defendant, given defendant's failure to prove daughter had authority to sign the agreement on decedent's behalf. The court further found the arbitration agreement was unenforceable against daughter individually on grounds of unconscionability. We affirm.

I

BACKGROUND

Irene Lopez (Irene),[1] a dependent adult within the meaning of Welfare and Institutions Code section 15610.23, was admitted to defendant Bartlett Care Center, doing business as French Park Care Center (the Facility), on October 5, 2016, with a medical history of diabetes, dementia, end-stage renal disease, generalized muscle weakness, and other debilitating conditions. At the end of October, a brief hospitalization interrupted Irene's stay at the Facility. She returned to the Facility (the return or second admission) on November 4, 2016, and remained there until January 15, 2017.

Sometime after Irene's return to the Facility, her daughter Jasmine Lopez (Jasmine) signed a two-page document entitled "RESIDENT-FACILITY ARBITRATION AGREEMENT," presented to her by a Facility employee, Mariana Godinez. Jasmine signed on page two, in the signature block designated "Resident Representative/Agent Signature." Godinez signed in the signature block for "Facility Representative[]"and dated her signature "11/14/16." Jasmine did not date her signature. Irene did not sign the agreement.

---

[1]     We refer to Irene Lopez and her daughter Jasmine Lopez by their first names for clarity, with no disrespect intended.

According to the operative complaint, on January 15, 2017, Irene was transferred to an acute care hospital with complaints of generalized body pain. The hospital diagnosed Irene with stage IV decubitus ulcers to her sarcrococcyx region and right foot, wet gangrene of the right lower extremity, and sepsis. The complaint alleged: "Decedent's condition was such that she had to undergo debridement of her infected sacral wound and also required 'guillotine style amputation' of her right [leg.]" The complaint further alleged Irene suffered these severe injuries, pain, and disfigurement because the defendants withheld "the most basic care and services," and recklessly disregarded her health and safety. Irene died on February 7, 2017, 23 days after leaving the Facility.

Jasmine, as Irene's successor in interest, sued the Facility, two related entities that managed the Facility, and various licensed and unlicensed individuals who provided care and services to Irene at the Facility, stating claims for negligence and willful misconduct, elder abuse, and violation of the Patient's Bill of Rights under Health & Safety Code, section 1430. Acting in her individual capacity, Jasmine also sued all defendants for the wrongful death of her mother.

A. *The Petition to Compel Arbitration*

The Facility filed a petition to compel arbitration of all claims stated against itself and the two management companies. The petition asserted the arbitration agreement Jasmine signed contractually bound her to arbitrate the claims she brought both as Irene's successor in interest and in her individual capacity.

1. The Contents of the Arbitration Agreement

Article Two of the arbitration agreement requires "the Resident" and the Facility to arbitrate all disputes, specifically including "any action for injury or death arising from negligence, intentional tort and/or statutory causes of action" under the Welfare and Institutions Code (i.e., Elder Abuse claims). The agreement carves out two exceptions from this arbitration mandate: "This Agreement shall be binding for any

3

dispute, except for disputes pertaining to collections or evictions brought by the parties hereto." (Art. 4.)

Although the arbitration agreement is entitled "RESIDENT-FACILITY ARBITRATION AGREEMENT," a particular provision in Article Four of the agreement purports to bind "*in their individual capacity*" any persons "who execute this Agreement below on the 'Resident Representative/Agent Signature' line," thereby mandating arbitration of the representative's *individual* claims against the Facility and any claims brought in a representative capacity.[2] (Art. 4, italics added.)

2. Jasmine's Authority to Sign the Agreement on Irene's Behalf

In support of its petition, the Facility attached employee Godinez's declaration, which purported to describe the circumstances in which the parties executed the arbitration agreement. According to Godinez, both Jasmine and Irene were present and Irene explicitly authorized her daughter to sign the agreement on Irene's behalf.

Godinez stated in her declaration: "During the admissions process, I went over and explained the Admission Agreement and the Arbitration Agreement to both [Jasmine] and [Irene] at the same time as they were together with me during the admission process. During my meeting with [Jasmine] and [Irene], I recall [Irene] verbally giving her daughter, [Jasmine], permission to act on her behalf in signing [the Facility's] Admission Agreement and the Arbitration Agreement attached hereto as

_____

[2] Article Four reads in its entirety as follows: "This Agreement shall be binding for any dispute, except for disputes pertaining to collections or evictions brought by the parties hereto. This Agreement is binding on all parties, including the Resident's representatives, executors, family members and heirs. *The Resident's representatives*, agents, executors, family members, successors in interest and heirs *who execute this Agreement below on the 'Resident Representative/Agent Signature' line are doing so not only in their representative capacity for the Resident, but also in their individual capacity and thus agree that any claims brought individually by the Resident's representatives*, agents, executors, family members, successors in interest and heirs *are subject to binding arbitration.* This Agreement may be rescinded by written notice within thirty (30) days of signature." (Italics added.)

4

Exhibit 'A'.  After I went over and explained [the Facility's] Admissions Agreement and the Arbitration Agreement to [Irene] and [Jasmine], [Jasmine] voluntarily signed the Arbitration Agreement in my presence and in the presence of [Irene].  [Irene] did not object to [Jasmine] signing the arbitration agreement on her behalf despite being aware that [Jasmine] was signing the arbitration agreement on her behalf.  Not only did [Irene] not object, she verbally gave her daughter, [Jasmine], permission to sign the Arbitration Agreement on her behalf."

Godinez went on to offer her opinion of Irene's mental acuity "during the admission process":  "Based on my interaction with [Irene] during the admission process she appeared to be alert and able to understand what we were discussing and appeared able to make her own decisions."

A starkly different picture of the circumstances in which the parties executed the arbitration agreement emerges from the declaration Jasmine submitted in opposition to the petition to compel arbitration.  Where Godinez described a document signing "[d]uring the admission process" with both Jasmine and Irene present,  Jasmine placed the signing in an office where Irene was not present and at a time later than and separate from "the admission process."

Jasmine stated in her declaration:  "In November 2016, following the start of [Irene's second admission] to the [Facility,] I was presented with a number of documents [including the arbitration agreement] by an individual who I believed to be an employee of the facility and was told I needed to sign them. . . . [¶]  []At the time I was presented with these documents, I was in a portion of the facility I believed to be the Business Office.  I was not in my mother's room, and my mother was not present at the time."

Jasmine flatly denied Godinez witnessed Irene verbally authorize Jasmine to sign the arbitration agreement on Irene's behalf:  "My mother never provided me with verbal authorization to sign any documents on her behalf at the time I was in the Business

5

Office at [the Facility], nor did she provide me any such authorization at any time during the course of her two admission[s] at [the Facility]. As such, Mariana Godinez could not have heard my mother provide me with express authorization to execute any documents on her behalf, as no such conversation ever took place in the presence of any person who represented themselves as an employee or agent of [the Facility], nor did any such discussion take place at any time in my presence."

Jasmine also disputed Godinez's assertion she "explained" the arbitration agreement to mother and daughter: "I have no recollection of anyone from [the Facility] explaining to me the significance and effect of [a] purported arbitration agreement, specifically that signing the 'Resident-Facility Arbitration Agreement' would then require all claims pertaining to the care and treatment my mother received at [the Facility] to be submitted to the arbitration process and would result in a waiver of her right to jury trial. . . ."

B. *The Order Denying the Petition to Compel Arbitration*

The trial court denied the petition to compel arbitration. The court ruled the Facility failed to meet its burden of proving "the existence of a valid arbitration agreement," stating: "Given the conflict in the evidence, the court finds that Defendants have not shown that Irene Lopez authorized Jasmine Lopez to execute the agreement on her behalf."

Additionally, the court held the arbitration agreement was unenforceable as to Jasmine in her individual capacity due to unconscionability. The minute order states: "As to Jasmine Lopez's individual claims, the court finds the agreement is both procedurally and substantively unconscionable. Jasmine Lopez was not identified as a

6

party to the agreement. In fact, no one was identified as a party to the agreement.[3] [Citation.] There was nothing to call out to Jasmine Lopez that she was signing an agreement to arbitrate her own claims. Jasmine Lopez was not shown to be a party to the agreement. Her signature block identifies her solely as resident representative/agent. And, the agreement itself was inserted, without heading or highlighting, into a provision otherwise directed to Irene Lopez's claims. As between Jasmine Lopez and Defendants, the agreement lacked mutuality."

This appeal followed.

II

DISCUSSION

The Facility argues the trial court erred in denying its petition to compel arbitration. The Facility contends it proved that Jasmine had both actual and ostensible authority to execute the arbitration agreement on her mother's behalf. The Facility further contends the court erred in finding the arbitration agreement procedurally and substantively unconscionable as to Jasmine in her individual capacity.

There is no merit to any of these contentions. We are guided in that assessment by the following law regarding standard of review: "'"'There is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]'"' [Citation.]" (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 839-840 (*Avila*).)

---

3 On page one of the arbitration agreement Jasmine signed, two lines were left conspicuously blank. At the top of the form, the typed words "Resident Name" appear, followed by a colon, and then an empty line. Likewise, in Article Two, nothing is written on the line for "Facility Name[.]"

1. *Substantial Evidence Supports the Trial Court Finding Jasmine Lacked Authority to Waive Irene's Trial Rights*

"Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law. [Citations.] The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. [Citation.]" (*Avila*, *supra*, 20 Cal.App.5th at pp. 843-844.)

The Facility contends it proved an enforceable arbitration agreement existed and the trial court erred in concluding otherwise. Citing the declaration of its employee Godinez, the Facility asserts it "introduced credible evidence demonstrating that [Jasmine] had the authority to sign the arbitration agreement on [Irene's] behalf." The Facility points out that Godinez "testified that she observed [Irene] verbally give her daughter authority to execute the agreement[,]" and this "express authority . . . creat[ed] an actual agency relationship." The Facility further argues that "even if actual agency is not found, [Irene's] conduct in allowing her daughter to sign the agreement on her behalf caused [the Facility] to believe [Jasmine] had the authority to do so, thereby at least creating ostensible agency." Again, the only evidence of Irene's purported "conduct . . . creating ostensible agency" was Godinez's description of the circumstances in which Jasmine signed the arbitration agreement.

The Facility's argument ignores a fundamental rule of appellate practice: A factual finding cannot be overturned on appeal simply because the record contains "credible evidence" to the contrary. Our task begins and ends with a determination of whether substantial evidence supports the trial court's factual finding Irene did not authorize Jasmine to sign the arbitration agreement on her behalf. "[T]he scope of our review is well established. 'We must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.]'" (*People v. Bradford* (1997) 14 Cal.4th 1005, 1033.) We conclude Jasmine's declaration submitted in opposition to the petition to compel arbitration

8

constitutes substantial evidence supporting the trial court's finding Jasmine had no authority, either actual or ostensible, to waive Irene's trial rights.

"[A]n agency relationship may arise by oral consent or by implication from the conduct of the parties. [Citation.] However, an agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency." (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587-588 (*Flores*) [nonsignatory patient at skilled nursing facility was not bound by arbitration agreement because her signatory husband was not her agent]; see also *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301-302 [comatose mother not bound by nursing home arbitration agreement signed by daughters because there was no evidence mother authorized daughters to act as her agents].)

In her declaration, Jasmine flatly disputed Godinez's description of the circumstances in which Jasmine signed the arbitration agreement. In particular, Jasmine challenged Godinez's contention Jasmine signed the agreement "during the admission process" in the presence of both Irene and Godinez, and that, just prior to the signing, Godinez heard Irene verbally authorize Jasmine to sign on Irene's behalf. Jasmine stated she did not sign the arbitration agreement or other admission documents "during the admission process." Instead, Jasmine said she signed the document at some later time in the business office without Irene present.

More to the point, Jasmine denied ever receiving her mother's authorization to sign "any documents on her behalf" and insisted Godinez could not have heard Irene authorize Jasmine to sign the agreement. Jasmine stated: "My mother never provided me with verbal authorization to sign any documents on her behalf at the time I was in the Business Office at [the Facility], nor did she provide me any such authorization at any time during the course of her two admission[s] at [the Facility]. . . . Mariana Godinez could not have heard my mother provide me with express authorization to execute any documents on her behalf, as no such conversation ever took place . . . ."

9

Jasmine's statement Irene never authorized her to sign any agreement on Irene's behalf supports the trial court's finding Jasmine lacked actual agency to waive Irene's trial rights. Jasmine's statement she signed the agreement in the business office without her mother present supports the court's implied finding Jasmine also lacked ostensible agency. It is difficult to see how Irene "allowed" her daughter to sign the agreement if Irene was not in the room when Jasmine signed it. (*Flores*, *supra*, 148 Cal.App.4th at pp. 587-588 ["an agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency"].)

The relative strength of Jasmine's declaration is bolstered by certain facets of Godinez's declaration that undermine confidence in its veracity. For example, Godinez's assertion the parties signed the agreement "during the admission process" conflicts with the fact Godinez dated her signature on the arbitration agreement "11/14/16" — ten days *after* Irene's return to the Facility. The trial court noted this discrepancy at the hearing, pointing out the November 14 date next to Godinez's signature is "not the first day that [Irene] was there on the second hospitalization, right?"

Defense counsel conceded the date of the arbitration agreement did not match the date of Irene's second admission, and stated it was "not uncommon" for an arbitration agreement to be signed sometime after admission of "an elderly individual[.]" Defense counsel explained that often "the resident is either not capable of executing" the documents due to incapacity or "maybe they are tired." Or, defense counsel stated, "the arbitration agreement might be presented at a later date because they forgot to go over it with the family, when they went over it during the initial admission process."

Also fueling skepticism of Godinez's declaration was her assertion Irene was "alert and able to understand what we were discussing and appeared able to make her own decisions" — a description seemingly at odds with Irene's documented dementia and serious medical conditions at admission.

10

In any event, the resolution of an evidentiary conflict is within the sole province of the trier of fact. (Eisenberg et al., Cal Practice Guide: Civil Appeals and Writs (The Rutter Group 2018) ¶ 8:4a, p. 8-2.) The trial court's finding that "[d]efendants have not shown that Irene [] authorized Jasmine [] to execute the agreement on her behalf" simply reflects the court's conclusion Jasmine's account of the signing was more believable than Godinez's. We defer to that credibility determination. (*Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027 [the rule of appellate deference to trial court credibility determinations is the same for written declarations as for oral testimony].)

Because substantial evidence supports the trial court's finding Jasmine had no authority to execute the arbitration agreement on Irene's behalf, the court properly denied the petition to compel arbitration of the claims Jasmine brought as Irene's successor in interest.

2. *The Trial Court Properly Found the Arbitration Agreement Unenforceable Against Jasmine Due to Unconscionability*

The Facility argues the trial court erred in ruling the arbitration agreement was unenforceable as to Jasmine's individual wrongful death claim due to unconscionability. The argument lacks merit.

Procedural and substantive unconscionability "'must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

11

"Whether an agreement is unconscionable presents a question of law which we review de novo. But 'factual issues may bear on that determination. [Citations]. Thus, to the extent the trial court's determination that the arbitration agreement was unconscionable turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard.' [Citation.]" (*Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1055.)

The Facility aptly explains the trial court found the arbitration agreement procedurally unconscionable as to Jasmine individually because the agreement "did not identify [Jasmine] as a party to the agreement and Article Four, which required [Jasmine] to arbitrate all claims in her individual capacity, was inserted into the arbitration agreement without headings or highlighting." The Facility argues these facts did not cause Jasmine to experience the sort of "unfair surprise" that constitutes procedural unconscionability. More specifically, the Facility makes three arguments for why the arbitration agreement is not procedurally unconscionable as to Jasmine. None is persuasive.

First, the Facility argues that because the arbitration agreement itself is only two pages and has "bold font and red ink," Jasmine "should have taken notice of the contents of the agreement." Second, the Facility asserts Jasmine cannot claim unfair surprise at being individually bound by the arbitration agreement because "the contents of the arbitration agreement were fully explained to [Irene] and her daughter[,]" as stated in Godinez's declaration. Third, Article Four "was only one of eight clauses in the agreement" and Jasmine "initialed the bottom of the agreement, near Article Four. Thus, any argument that [Jasmine] was not made aware of Article Four is unavailing." In essence, the Facility argues Jasmine cannot claim unfair surprise at the *contents* of the

arbitration agreement because the agreement is short, has markings to signal its general nature as a binding contract, and, in any event, Godinez explained the agreement to her.

Of course, Godinez's assertion she "explained" the agreement to Jasmine carries no weight here, given the trial court believed Jasmine's account of the circumstances of her signing, rather than Godinez's. More importantly, the brevity of the arbitration agreement and the fact it contained bold face and red lettering does not overcome the fact the agreement on its face is between a *resident* and the facility. Nowhere does the agreement warn that a person who signs as a resident's representative or agent is agreeing to be bound in his or her individual capacity and representative capacity. Article Four contains no heading or other warning that it includes a provision waiving the individual trial rights of one who signs the agreement as a resident's representative or agent. Nor does the signature block warn of the purported *dual* capacity in which the representative is signing. We conclude the trial court properly found the arbitration agreement procedurally unconscionable as to Jasmine.

As for substantive unconscionability, the trial court reasoned the arbitration agreement lacked mutuality because it requires residents to arbitrate those claims they are most likely to bring against the Facility (medical malpractice, personal injury, elder abuse) while allowing the Facility to pursue in court the actions the Facility is most likely to bring against residents (evictions and collections). The Facility argues the trial court wrongly concluded the Article Four exception for "disputes pertaining to collections or evictions" benefits only the Facility: "Both residents and [the Facility] might make claims pertaining to evictions and collections" and the "carve-out" applies to such claims regardless of who brings them. The argument is absurd; the provision is clearly "one-sided," benefitting only the Facility, and thus renders the agreement itself substantively unconscionable . (*Armendariz*, *supra*, 24 Cal.4th at p. 114 [substantive unconscionability focuses on overly harsh or one-sided results].)

13

Finally, the Facility argues the "single carve-out provision could be easily severed." Jasmine points out that severance "is an impossibility, as [the Facility] never sought severance of said provision with the trial court, and cannot do so at this juncture." (See *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1149 [defendants forfeited claim that trial court abused its discretion by ruling entire arbitration agreement unenforceable rather than severing unconscionable terms where defendants never raised severance in trial court].)

The trial court properly ruled the arbitration agreement was procedurally and substantively unconscionable as to Jasmine and thus unenforceable against her in her individual capacity.

III

DISPOSITION

The order denying the petition to compel arbitration is affirmed. Respondents are entitled to their costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JASMINE LOPEZ, | |
| Plaintiff and Respondent, | G056249 |
| v. | (Super. Ct. No. 30-2018-00965892) |
| BARTLETT CARE CENTER, LLC, et al., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |
| Defendants and Appellants. | |

It is ordered that the opinion filed in the above matter on July 30, 2019, is hereby modified as follows:

1. On page 13, the third sentence of the second full paragraph, beginning with "The argument is," delete the word "absurd" and replace it with "frivolous" so the sentence reads:

"The argument is frivolous; the provision is clearly "one-sided," benefitting only the Facility, and thus renders the agreement itself substantively unconscionable."

This modification does not change the judgment.

Respondents have requested that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule

8.1105(c).  The request is GRANTED.  The opinion is ordered published in the Official

Reports.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.


2