Filed 7/1/21  Hawkins v. Rechnitz CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| OPAL RENEE HULET HAWKINS, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SHLOMO RECHNITZ et al., <br><br> Defendants and Appellants. | B304828 <br><br> (Los Angeles County Super. Ct. No. 19STCV30411) |

APPEAL from orders of the Superior Court of Los Angeles County.  Barbara M. Scheper, Judge.  Affirmed.

Giovanniello Law Group, Alexander F. Giovanniello, Thomas C. Swann and Erik Bressler for Defendants and Appellants.

Garcia & Artigliere, Stephen M. Garcia and William M. Artigliere for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendants and appellants Shlomo Rechnitz, Centinela Skilled Nursing & Centre East, LLC, doing business as Osage Healthcare & Wellness Centre, Brius Management Company and Rockport Administrative Services, LLC appeal from the orders denying their motions to compel arbitration of the elder abuse complaint filed by plaintiff and respondent Opal Renee Hulet Hawkins.  The trial court found the arbitration agreement could not be enforced against plaintiff because defendants failed to prove plaintiff's mother had authority to sign the agreement on plaintiff's behalf.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2015, plaintiff was admitted to defendant Centinela Skilled Nursing & Centre East, a residential nursing facility doing business as Osage Healthcare & Wellness Centre (hereafter Osage Healthcare).  Defendants Brius Management Company and Rockport Administrative Services are entities owned by defendant Shlomo Rechnitz and are involved in the operation and management of Osage Healthcare.

During the admission process, plaintiff's mother, Martha Hulet, signed several documents on behalf of her daughter, including an admission agreement and an arbitration agreement.  Ms. Hulet signed all of the documents on December 28, 2015, and is identified in those documents variously as plaintiff's "[r]epresentative," "agent" or "[l]egal [g]uardian."  The arbitration agreement identifies Ms. Hulet as plaintiff's " 'Legal Representative' and/or 'Agent.' "  None of the documents was signed by plaintiff.  The record does not contain any power of attorney executed by plaintiff or any other document expressly authorizing Ms. Hulet to act as plaintiff's agent.

The arbitration agreement invokes the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) and provides that any dispute

2

relating to the care and treatment of plaintiff shall be submitted to and resolved by binding arbitration. The description of claims covered by the agreement specifically includes any and all claims for elder abuse. The signatories to the arbitration agreement are Martha Hulet and an illegible signature of a representative for Osage Healthcare (the actual name of the facility is handwritten as "Centinela SN and Wellness Centre" but the parties do not raise the misnomer as an issue).

Three days before the admission paperwork was signed, plaintiff was apparently examined by a doctor who reported that she suffered from numerous ailments including "delirium." The doctor checked a box on the examination form that stated plaintiff had "the capacity to understand and make decisions."

In August 2019, after plaintiff had been discharged from the Osage Healthcare facility, plaintiff, by and through her guardian ad litem, filed an action for elder abuse against defendants. The entity defendants and defendant Rechnitz are sued as alter egos of Osage Healthcare. Plaintiff alleged that at the time of her admission to defendants' facility, she had suffered a "brain aneurism that affected her short-term memory" as well as other ailments, but she was still "able to walk and talk." Plaintiff alleged numerous acts of neglect and negligent medical care by defendants, including overmedication that resulted in her being transferred to a hospital "where her stomach was pumped," lack of supervision resulting in a fall and a broken ankle, and general decline in health.

The entity defendants filed a motion to compel arbitration, attaching the five-page arbitration agreement signed by plaintiff's mother. Defendant Rechnitz, who was served later, filed a separate motion to compel arbitration raising the same arguments as the entity defendants. Defendants argued that plaintiff's mother was her lawful agent and plaintiff was

therefore bound by the arbitration agreement signed on her behalf.

In opposing the motions, plaintiff submitted a declaration by Ms. Hulet. Ms. Hulet stated she did not have a power of attorney to act on her daughter's behalf and that her daughter had never said she wanted or authorized her to act as her agent.

The trial court denied defendants' motions, finding that defendants failed to show plaintiff authorized her mother "either expressly or ostensibly" to act as her agent in signing the arbitration agreement.

Defendants appealed (case No. B304828). Defendant Rechnitz filed a separate appeal (case No. B307251) from the denial of his motion after being dismissed from the appeal of the entity defendants' motion. We consolidated the appeals for briefing, argument and decision under case No. B304828.

Plaintiff filed a motion to dismiss the consolidated appeal and for sanctions. We are not persuaded the appeal is frivolous and therefore deny the motion to dismiss and request for sanctions. However, we affirm the orders denying the motions to compel arbitration on the merits.

## DISCUSSION

Where, as here, the trial court's decision regarding arbitrability depends on the resolution of disputed facts, "we review the decision for substantial evidence." (*Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1158; accord, *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653, & *Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317 (*Lopez*).)

The factual issue here is straightforward: Was there credible evidence Martha Hulet had authority to execute the arbitration agreement on plaintiff's behalf? The answer is no.

4

It is undisputed there was no written power of attorney authorizing Martha Hulet to act as plaintiff's agent, nor any words or conduct by plaintiff expressly authorizing Ms. Hulet to act on her daughter's behalf. Therefore, plaintiff can be bound by the arbitration agreement only if there is evidence of ostensible agency.

"[A]n agency relationship may arise by oral consent or by implication from the conduct of the parties. [Citation.] However, an agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency." (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587–588 (*Flores*).) " 'To hold otherwise would give any agent, not the authority, but the naked power to bind his principal to any contract within the general scope of his duties, however fantastic or detrimental to the principal's interest such contract may be.' " (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1087 (*Valentine*).)

There must be evidence of " 'some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists.' " (*Flores, supra,* 148 Cal.App.4th at p. 588.) " '[T]he "formation of an agency relationship is a bilateral matter. Words or conduct by *both principal and agent* are necessary to create the relationship." ' " (*Ibid.*; see also Civ. Code, § 2317 ["Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."].)

Defendants, as the parties seeking to compel arbitration, bore the burden of proving there was an agency relationship between Martha Hulet and plaintiff in order to establish plaintiff was bound by the arbitration agreement. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 [party moving to compel arbitration bears

burden of proving enforceable agreement to arbitrate]; accord, *Lopez*, *supra*, 39 Cal.App.5th at p. 317; *Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1128 (*Young*) [" 'Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement.' "].)

The evidence presented by defendants consisted almost entirely of copies of the admission paperwork signed by Martha Hulet. Defendants argued that plaintiff never objected to her mother signing the admission paperwork so she could be admitted to Osage Healthcare. Defendants conceded that plaintiff, at the time of admission, suffered from "cognitive impairment, seizure disorder, delirium, hypokalemia and failure to thrive" but that she nevertheless had the capacity to authorize her mother to act as her agent. In so arguing, defendants offered only a one-page excerpt from plaintiff's medical records in which a doctor apparently examined plaintiff three days before the admission paperwork was signed by Ms. Hulet. The doctor acknowledged plaintiff's various ailments but also opined she had "the capacity to understand and make decisions."

Defendants did not offer evidence plaintiff was present in the same room with her mother when her mother signed the arbitration agreement (or any of the admission paperwork) on December 28, 2015, or that plaintiff was otherwise aware her mother was signing those documents. Nor did defendants offer any evidence of plaintiff's mental state or medical condition on December 28, 2015.

Defendants contend the one-page medical record stating that on December 25, 2015, a doctor believed plaintiff had the capacity to understand and make decisions, along with the fact plaintiff remained silent and did not object to her mother signing

the admission paperwork, was sufficient to support a finding of ostensible agency.

Similar arguments have been rejected by numerous courts. For example, in *Young, supra*, 220 Cal.App.4th 1122, the court affirmed the denial of a skilled nursing facility's motion to compel arbitration of a patient's negligence complaint. (*Id.* at p. 1127.) The patient's daughter had signed the arbitration agreement on behalf of her mother. *Young* explained, "[t]he trial court here was clearly not convinced that plaintiff did anything to permit an inference of ostensible authority. The admissions coordinator . . . stated in her declaration that it was her 'custom and practice' to provide the arbitration agreement to the resident 'and/or his legal representative/agent [and] answer any questions that he/she may have.' . . . [E]ven if we assume that [the admissions coordinator] showed the agreement to the 'resident' (i.e., plaintiff) on this occasion, there is no evidence of a response by *plaintiff* that permitted a reasonable belief that her daughter was authorized to sign an arbitration agreement as her agent. Likewise, in its role as trier of fact the superior court was entitled to reject as insufficient [the admissions coordinator's] statement that '[b]ased on my custom and practice, I would have confirmed with [the resident] that [her daughter] had her permission to sign documents on the resident's behalf.' " (*Id.* at p. 1134, fn. omitted.)

Similarly in *Lopez, supra*, 39 Cal.App.5th 311, a residential nursing facility moved to compel arbitration of a resident's negligence action where the only signatory to the arbitration agreement was the resident's daughter. (*Id.* at pp. 313–314.) The facility submitted a declaration of one of its employees who attested she heard the resident give her daughter the authority to sign the arbitration agreement. (*Id.* at p. 315.) The daughter submitted an opposing declaration stating her mother never gave her authority to act as her agent and that her mother was not

7

even in the room when she was given the agreement to sign. (*Id.* at pp. 315–316.)

In affirming the trial court's denial of the facility's motion, the court reasoned, "[o]ur task begins and ends with a determination of whether substantial evidence supports the trial court's factual finding [the plaintiff] did not authorize [her daughter] to sign the arbitration agreement on her behalf. '[T]he scope of our review is well established. "We must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.]" ' [Citation.] We conclude [the daughter's] declaration submitted in opposition to the petition to compel arbitration constitutes substantial evidence supporting the trial court's finding [the daughter] had no authority, either actual or ostensible, to waive [the plaintiff's] trial rights." (*Lopez, supra,* 39 Cal.App.5th p. 318; see also *Valentine, supra,* 37 Cal.App.5th at pp. 1087–1089 [wife's purported silence and failure to object to husband signing arbitration agreement on her behalf insufficient to support finding of ostensible agency] & *Flores, supra,* 148 Cal.App.4th at pp. 587–588 [nonsignatory patient not bound by arbitration agreement signed by husband because no evidence demonstrated he was her agent].)

Like the defendants in *Young*, *Lopez*, *Valentine* and *Flores*, defendants failed to satisfy their movant's burden. Defendants failed to demonstrate with credible evidence that plaintiff's mother had the authority to sign the arbitration agreement on plaintiff's behalf, and the trial court was within its authority as factfinder to credit Ms. Hulet's opposing declaration. Substantial evidence supports the trial court's denial of defendants' motions.

Finally, we disagree with defendants' contention the trial court's ruling runs afoul of *Kindred Nursing Ctrs. Ltd. P'ship v. Clark* (2017) ___U.S.___ [137 S.Ct. 1421, 1424–1425] (*Kindred*).

8

In *Kindred*, the United States Supreme Court reversed a decision by the Kentucky Supreme Court that declined to give effect to two arbitration agreements signed by family members of two nursing home residents. The two family members (the wife and daughter respectively of the two residents) each held general powers of attorney to act on behalf of their loved ones. (*Kindred, supra,* 137 S.Ct. at pp. 1425–1426.) The Kentucky Supreme Court concluded that because the rights to a jury trial and access to the courts were guaranteed by the state Constitution, a general power of attorney did not provide authority for an agent to waive those rights and agree to arbitration unless it " 'expressly so provide[d].' " (*Kindred,* at p. 1426.) *Kindred* held that Kentucky's judge-made rule "single[d] out arbitration agreements for disfavored treatment" and therefore violated the FAA. (*Kindred,* at p. 1425.)

But *Kindred* did not conclude the FAA preempts generally applicable state laws regarding agency or the evidentiary requirements to prove an agreement, including an arbitration agreement, falls within the scope of authority, if any, conferred by a principal.

In denying defendants' motions, the trial court applied general principles of agency law and did not apply or articulate any rule or requirement unique to arbitration agreements. Defendants say that plaintiff did not contest her mother's authority to sign the other admission documents and therefore the arbitration agreement was singled out for disfavored treatment in direct violation of *Kindred*.

We are not persuaded. The other documents signed by plaintiff's mother during the admission process are not at issue. The focus of plaintiff's argument and the trial court's ruling was the arbitration agreement because that is the only agreement defendants sought to enforce. (See *Garcia v. KND Development*

9

*52, LLC* (2020) 58 Cal.App.5th 736, 743–744; *id.* at p. 747 ["We cannot infer discrimination from the mere fact that the court's ruling was limited to appellants' arbitration agreements, as only those agreements were at issue on appellants' petition."].)

## DISPOSITION

The orders denying defendants' motions to compel arbitration are affirmed.   Plaintiff shall recover her costs of appeal.


GRIMES, Acting P. J.

WE CONCUR:


WILEY, J.


OHTA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.