Filed 11/19/21  Valenzuela v. THC Orange County CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CHRISTINA VALENZUELA, Plaintiff and Respondent, v. THC ORANGE COUNTY, LLC, Defendant and Appellant. | B314860 (Los Angeles County Super. Ct. No. 21STCV18821) |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory Keosian Judge.  Affirmed.

Giovanniello Law Group, Alexander F. Giovanniello and Erik M. Bressler for Defendant and Appellant.

Garcia & Artigliere, Stephen M. Garcia, William M. Artigliere and David M. Medby for Plaintiff and Respondent.

Appellant THC Orange County, LLC, dba Kindred Hospital Los Angeles (Kindred) appeals from the denial of its petition to compel alternative dispute resolution (ADR) in an elder abuse lawsuit respondent Christina Valenzuela (Christina) brought against Kindred.[1]  The petition was based on an ADR agreement signed by Christina's adult daughter, Sandra, as part of the admission paperwork Sandra executed while her mother was at Kindred.  We agree with the trial court that Kindred failed to meet its burden of establishing that Sandra had authority to bind Christina to the terms of the ADR agreement.  Because the record does not compel an opposite conclusion, and because the Federal Arbitration Act, assuming it applies, does not preempt the state law ostensible agency principles we apply in reaching this conclusion, we affirm.

## FACTS AND PROCEEDINGS BELOW

On April 14, 2021, Christina was admitted at Kindred with clinical diagnoses of respiratory failure, pneumonia, septic shock and kidney failure.  Sandra gave consent for Christina to undergo hemodialysis and a blood transfusion the following day.  Three days later, on April 18, 2021, Sandra executed Christina's admission paperwork, which included an agreement to utilize ADR procedures—namely, first mediation and then, if necessary, binding arbitration—to resolve, inter alia, "any legal claim or civil action arising out of or relating to [Christina's] hospitalization" at Kindred (the ADR agreement).  Sandra later

_____

[1] Because this appeal requires us to discuss both Christina Valenzuela and her daughter Sandra Valenzuela, to avoid confusion, we refer to them by their first names.  No disrespect is thereby intended.

gave consent for Christina to undergo various medical procedures at Kindred, including placement of a midline catheter on April 25, 2021 and May 3, 2021, and placement of a peripheral venous midline on May 20, 2021 and May 26, 2021. The record does not contain any indication Christina expressly granted Sandra the authority to make decisions or execute documents on her behalf. Christina did not sign any of the admissions documents or medical consent forms.

Christina ultimately sued Kindred for elder abuse, alleging that a Kindred employee had sexually molested her during her time at the facility. Kindred filed a petition to compel the dispute to ADR, citing the ADR agreement. In support of its petition, Kindred offered the declaration of Kindred admissions representative Jennifer Tennyson. (See *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1085 (*Valentine*) ["[p]etitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony"].) Tennyson declared that Christina's admissions paperwork indicated "Sandra . . . [had] held herself out as possessing the requisite authority to execute [Christina's] admission documents." Tennyson did not claim to have witnessed or been involved in the execution of Christina's admissions paperwork.

Christina opposed the ADR petition, arguing Sandra lacked the requisite authority to execute the ADR agreement on Christina's behalf. Christina's supporting documentation included a declaration by Sandra indicating that Sandra had signed the admissions documents outside of Christina's presence. Sandra's declaration further indicated that before April 18, 2021, Christina had never granted Sandra power of attorney, that

3

Christina never authorized Sandra to sign an arbitration agreement on Christina's behalf, and that although Christina only spoke Spanish, Kindred had not provided Spanish language translations of the Kindred admissions documents.

The trial court denied Kindred's petition on the basis that Kindred had failed to establish Sandra had actual or ostensible authority to bind Christina to the ADR agreement. Kindred timely appealed the court's denial.[2]

## DISCUSSION

" ' " 'If the court's order [denying a petition to compel arbitration] is based on a decision of fact, then we adopt a substantial evidence standard [of review]. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' " ' " (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 839−840 (*Avila*).) Both the trial court's denial of Kindred's petition and Kindred's argument on appeal hinge on whether Sandra had the necessary authority to bind Christina to the ADR agreement. This presents a question of fact. (See, e.g., *Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 318 (*Lopez*).) Accordingly, we review for substantial evidence.

When we are reviewing " '[a] trier of fact['s] . . . express[ ] or implicit[ ] conclu[sion] that the party with the burden of proof did not carry the burden' " as to a particular fact, however, the substantial evidence standard of review looks somewhat different

_____

[2] Christina moved this court to dismiss Kindred's appeal and requested sanctions on the basis that Kindred's appeal is frivolous. We deny the motions.

4

than usual.  (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 (*Dreyer's*).)  Namely, when such a party appeals, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Ibid.*)  "The party seeking to compel arbitration"—here, Kindred—"bears the burden of proving the existence of a valid arbitration agreement" binding the party to be so compelled.  (*Avila, supra*, 20 Cal.App.5th at p. 844.)

### A.   *The Record Does Not Compel the Conclusion That Sandra Acted As Christina's Ostensible Agent In Executing the ADR Agreement*

We thus consider whether the evidence allows only one conclusion: that Sandra had authority to execute the ADR agreement on Christina's behalf.  We conclude it does not.

"[A] person who is authorized to act as [a] patient's agent can bind the patient to an arbitration agreement."  (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587 (*Flores*), italics omitted.)  "Even when there is no written agency authorization, an agency relationship may arise by oral consent or by implication from the conduct of the parties.  [Citation.] However, an agency cannot be created by the conduct of the agent alone; rather, conduct by the principal is essential to create the agency."  (*Id.* at pp. 587–588, italics omitted.)  " ' " 'The principal must in some manner indicate that the agent is to act for him.' " ' "  (*Id.* at p. 588; accord**,** *Lopez, supra,* 39 Cal.App.5th at p. 319.)

Here, Kindred has not identified any action by Christina that might indicate Christina and Sandra had an agency relationship.  Rather, Kindred argues Christina's *in*action provided such an indication—namely, Christina's failure to object

5

when Sandra consented to medical treatment on Christina's behalf, executed Christina's admissions paperwork, and received medical treatment to which Sandra had consented.  We agree that "occasionally, where ' " 'the principal knows that the agent holds himself out as clothed with certain authority, and remains silent, such conduct on the part of the principal may give rise to liability.  [Citation.]'  [Citation.]"  [Citation.]'  [Citation.]  [¶] However, in those instances, it was reasonable for the third party to rely on the purported agent despite [the principal's] silence due to a historical relationship or course of conduct." (*Valentine, supra*, 37 Cal.App.5th at p. 1089; see *Flores, supra*, 148 Cal.App.4th at p. 588 ["[t]he mere fact [plaintiff's husband] signed the admission documents . . . [was] insufficient" to establish her husband was acting as an authorized agent of patient with dementia because "[t]he record [was] completely silent regarding [their] dealings prior to her admission and/or their interactions at the time of her admission"]; see also *Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1132 (*Young*) [" '[a]n agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him' "], quoting Civ. Code, § 2300, italics omitted.)  For example, in *Valentine*, the plaintiff suffered a shoulder injury that prevented her from executing hospital paperwork, but "maintained the mental capacity to consent[,] . . . was present when [her husband] signed the [arbitration] agreements, had a sufficient opportunity to object, [and] instead remained silent."  (*Valentine, supra*, 37 Cal.App.5th at p. 1088.)  The Court of Appeal concluded plaintiff's "silence in this instance was insufficient to convey ostensible authority to [her husband] to execute arbitration

agreements on her behalf" (*id.* at pp. 1088−1089), because the record contained no evidence regarding "a prior relationship or course of conduct with [plaintiff] on which defendants could rely to establish [plaintiff's husband] was her agent with authority to bind her to arbitration." (*Id.* at p. 1089.) Absent such a baseline against which to compare the plaintiff's silence, her "silence . . . communicated nothing." (*Ibid.*) The record here contains no evidence establishing a historical relationship or course of conduct prior to Sandra executing the ADR agreement—let alone a prior course of conduct "compel[ling] the finding" (*Dreyer's, supra,* 218 Cal.App.4th at p. 838) that Christina's silence indicated Sandra had authority to execute the ADR agreement on her behalf.

In arguing to the contrary, Kindred appears to rely on Sandra's having consented to Christina receiving medical care at Kindred before and after Sandra signed the ADR agreement, and Christina's acceptance of that medical care without objection. That Christina acquiesced to receiving medical care suggests neither (1) that Christina knew Sandra had authorized this care (nothing in the record speaks to the issue) nor (2) that Christina intended to deputize Sandra to speak on her behalf in any other matters related to her stay at Kindred, including and in particular an ADR agreement with Kindred. Thus, on this record, Christina's acquiescing to medical care Sandra approved—even more than once—is insufficient to establish Sandra had ostensible authority to bind Christina to an ADR agreement with Kindred.

Thus, the record does not contain substantial evidence— let alone compel the conclusion—that Sandra had ostensible authority to execute the ADR agreement on Christina's behalf.

7

Kindred argues that ostensible authority is created "when the principal neglects to take action to disavow the agent's purported authority and thereafter receives the benefits of this authority." The few cases Kindred cites for this neither support such a broad statement, nor require a different result in this case. Two of the cases, *Whitlow v. Rideout Memorial Hospital* (2015) 237 Cal.App.4th 631 and *Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448, address the application of the ostensible agency doctrine to physicians working within hospitals, explaining the elements of ostensible agency in that context are: "(1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency relationship by the plaintiff. [Citations.]" (See *id.* at p. 1453; see *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 405.) These cases hold that the first element "is satisfied when the hospital 'holds itself out' to the public as a provider of care. [Citations.] . . . [Citations.] . . . [A] hospital is generally deemed to have held itself out as the provider of care, unless it gave the patient contrary notice. [Citations.] . . . [Citations.] [¶] The second element, reliance, is established when the plaintiff 'looks to' the hospital for services, rather than to an individual physician." (*Mejia, supra*, 99 Cal.App.4th at pp. 1453−1454.) But these presumptions "have no application here," as they are driven by the difficulty of applying traditional ostensible agency principles to the unique hospital-physician relationship. (*J.L., supra*, at p. 405; see *Mejia, supra*, at pp. 1451−1454 [discussing how case law has evolved to address this difficulty].) Thus, neither the facts nor the reasoning of these cases supports Kindred's argument. The third case

8

Kindred cites, *Young, supra,* 220 Cal.App.4th 1122, simply recites a rephrased version of the general rule noted above:  that ostensible authority can be founded on " ' "neglect on the part of the alleged principal," ' " but only if such neglect " ' "creat[es] a belief in the minds of third persons that an agency exists, and a reasonable reliance thereon by such third persons." ' "  (*Id.* at p. 1133.)  Christina's acceptance of medical treatment Sandra authorized—particularly when the record does not establish Christina knew she authorized it—is not neglect of this type.

**B.**    ***The Federal Arbitration Act Does Not Preclude Application of State Law Ostensible Agency Principles Here***

Finally, Kindred argues that "the [Federal Arbitration Act (FAA)] precludes [Valenzuela] or the court from singling out the arbitration agreement for disparate treatment."  (Capitalization and boldface omitted.)  It suggests that allowing Sandra's authority to consent to medical treatment to go unchallenged, while at the same time concluding Sandra lacked ostensible authority to execute the ADR agreement, would be an application of state law that runs afoul of the FAA.  We disagree.

Kindred is correct that, if the FAA applies, it precludes state law (and, accordingly, courts applying state law) from disfavoring arbitration agreements or treating arbitration agreements differently than other types of agreements.  (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339; *Kindred Nursing Centers Ltd. v. Clark* (2017) 581 U.S. ___ [137 S.Ct. 1421, 1426, 197 L.Ed.2d 806, 811−812] (*Clark*).)  But the ostensible agency principles we apply here do no such thing.  These principles require—across the board for all types of agreements executed by a would-be agent—either express

9

authorization by the principal that the agent may execute the agreement on her behalf or action by the principal establishing such authorization.  Nothing in that rule singles out—either in theory or in practice—arbitration agreements.

This is in direct contrast with the law determined to violate the FAA in *Clark, supra,* 137 S.Ct. 1421, on which Kindred heavily relies.  Under the Kentucky "clear-statement rule" at issue in that case, even where an agent held a written power of attorney, that "agent could deprive her principal of an 'adjudication by judge or jury' only if the power of attorney 'expressly so provide[d].' " (*Clark, supra,* 137 S.Ct. at p. 1426.) The United States Supreme Court concluded that although this limitation on a power of attorney did not expressly apply only to arbitration agreements, it "covertly accomplishe[d] the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." (*Ibid.*)

Nor does the fact that Christina is challenging only her daughter's authority to execute the arbitration agreement, not her daughter's authority to consent to her medical treatment, run afoul of the FAA.  The FAA does not require individual *litigants* to be even-handed in the *arguments* they choose to raise; it only requires the law be even-handed in how it interprets and enforces agreements.  In deciding the only issue that is before us—whether the record compels the conclusion that Sandra had authority to execute the ADR agreement on Christina's behalf— we apply general principles of ostensible agency that do not differentiate between different types of agreements executed by a would-be ostensible agent.  And Kindred has not identified anything inherent in the nature of an ostensible agency analysis

10

that renders it more likely to invalidate an arbitration agreement than other types of agreements.

## DISPOSITION

The order of the trial court denying the petition to compel alternative dispute resolution is affirmed.  Respondent is awarded her costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.

11