Filed 12/20/23  Smith v. Folsom Investors CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RONALD D. SMITH et al., | C097549 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201900264159CUPOGDS) |
| v. | |
| FOLSOM INVESTORS, L.P., et al., | |
| Defendants and Appellants. | |

Carol McCormac (McCormac) was a resident at Empire Ranch Alzheimer's Special Care Center (Empire Ranch), a licensed elderly residential care facility owned, operated, and managed by defendants Folsom Investors, L.P., doing business as Empire Ranch, Folsom Group, LLC, Jerry Erwin Associates, Inc., doing business as JEA Senior Living, and Brian Pawloski (Pawloski).  After McCormac's death, her surviving children and partner, Ronald Smith, Carrie Zenker (Zenker), and Amario Ferreira (collectively, plaintiffs), sued defendants as her successors in interest and in their individual capacity.

1

Defendants petitioned to compel arbitration, citing the arbitration clause in McCormac's resident admission agreement. The trial court denied the petition.

On appeal, defendants contend that the trial court erred in finding: (1) the procedural provisions of the Federal Arbitration Act do not apply; (2) the arbitration clause is procedurally unconscionable and contains substantively unconscionable terms; and (3) severing plaintiffs' individual claims from their successor claims is inappropriate.

We agree with the trial court that the arbitration clause is unconscionable and conclude that the trial court did not abuse its discretion in finding severance inappropriate. Therefore, we need not address defendants' Federal Arbitration Act argument. The order denying defendants' petition to compel arbitration is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

McCormac needed to be transferred out of a hospital following a dementia-related incident that made her dangerous to herself and others. Empire Ranch was the only facility near McCormac's family that provided the kind of care she needed.

On the same day of McCormac's admission, Empire Ranch's administrator Pawloski presented McCormac's daughter Zenker "with a stack of paperwork to sign," including the resident admission agreement on a preprinted form. Zenker initialed and signed the 24-page resident admission agreement as McCormac's "Responsible Party." The agreement contains a half-page arbitration clause that states in pertinent part:

> By signing below, you agree, that any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at the Facility, whether made against us or any other individual or entity, including, without limitation, personal injury or wrongful death claims, shall be resolved by submission to neutral, binding arbitration in accordance with the Federal Arbitration Act; except that any claim or dispute involving unlawful detainer proceedings (eviction) or any claims that can be brought in small claims court shall not be subject to arbitration unless both parties agree to arbitrate such proceedings. If someone other than the resident signs this arbitration clause, he/she understands and

2

agrees that he/she is agreeing to arbitrate on behalf of the resident and on behalf of him/herself as an individual . . . The arbitration shall be administered by the Judicial Arbitration and Mediation Services ("JAMS") . . . Each party shall bear its own costs and fees in connection with the arbitration, unless awarded or part of an elder abuse case. **You may withdraw your agreement to arbitrate within thirty (30) days after signing this Agreement by giving written notice of your withdrawal to us**. This arbitration clause binds all parties to this Agreement and their executors, successors, as applicable . . . .

**By signing below, you warrant that this paragraph has been explained to you, that you understand its significance, that you voluntarily agree to be bound by it, and that you understand that agreeing to arbitration is not a condition of admission to the Facility.**

The arbitration clause contains its own signature block that Zenker signed as the "Responsible Party."

"During the process of signing this paperwork," Zenker stated in her declaration opposing defendants' petition, Pawloski "did not explain to me anything about what arbitration consists of. He did not tell me how much an arbitration would cost or even explain that arbitrators can make up their own fees. He did not explain to me that arbitrators use their own rules (as opposed to the rules used in court) and he did not provide me with a copy of the rules that would be used. He did not tell me that the arbitration provision in the admission agreement could be negotiated." She continued: "I did not intend to waive my individual right to bring a case in civil court and I did not see (nor was I advised of) any language in the arbitration clause that indicated I was waiving my individual right to bring a lawsuit in civil court. Moreover, when I signed the arbitration clause, I did not intend to waive the rights of anyone else." Zenker did not have a legal background.

On the other hand, Pawloski declared that he "explained the arbitration process to Ms. Zenker, advising her that if there was any dispute regarding Carol McCormac's

3

admission, that the dispute would be resolved via arbitration and not a trial." He further claimed he "told Ms. Zenker that signing the ADR Agreement was optional" and that he "pointed out the bolded language in the agreement regarding the option to withdraw the agreement within thirty days of signing the agreement." According to Pawloski, Zenker "expressed no reservations or objection to signing the documents."

After McCormac's death, plaintiffs sued defendants for elder neglect/abuse, negligence/negligence per se, violation of McCormac's Resident Bill of Rights (Health & Saf. Code, § 1569.269; 22 Cal. Code Regs., § 87468), fraud/misrepresentation, financial elder abuse, unfair business practices, and wrongful death. Defendants petitioned to compel arbitration.

Plaintiffs' counsel estimated that JAMS would charge the parties between $138,600 and $161,200, excluding any incidental professional time, to conduct the arbitration. McCormac's estate consists of $30,000 in cash, a one-half ownership interest in a home occupied by her surviving partner, and a one-third interest in a condominium that was subject to ongoing litigation. Zenker allocated the cash to pay for attorney's fees and costs relating to the condominium litigation and for the refurbishment of McCormac's properties.

The trial court denied defendants' petition to compel. Defendants timely appealed.

DISCUSSION

Defendants contend the trial court erred in finding the arbitration clause is unconscionable. We disagree.

Both California law and federal law favor enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*).) But generally applicable contract defenses such as unconscionability may be applied to invalidate an arbitration agreement without contravening the Federal Arbitration Act or California law. (*OTO, L.L.C. v. Kho* (2019)

4

8 Cal.5th 111, 125.) "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*Ibid.*) "[T]he doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133.) Both procedural and substantive unconscionability must be present to establish unconscionability. (*Armendariz*, at p. 114.) "But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' " (*Ibid.*)

The party asserting unconscionability bears the burden of proof. (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 126.) We review the unconscionability of an arbitration agreement de novo, applying general principles of California contract law. (*Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 102.)

A. *Procedural Unconscionability*

"Analysis of unconscionability begins with an inquiry into whether the contract was a contract of adhesion—i.e., a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853.) But "[a]dhesion is not a prerequisite for unconscionability." (*Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1409.)

"Procedural unconscionability focuses on the factors of surprise and oppression." (*Harper v. Ultimo, supra*, 113 Cal.App.4th at p. 1406.) "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of

5

the party; and (5) whether the party's review of the proposed contract was aided by an attorney." (*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.* (2015) 232 Cal.App.4th 1332, 1348.) "Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." (*Flores v. Transamerica HomeFirst, Inc., supra*, 93 Cal.App.4th at p. 853.)

Here, the resident admission agreement is oppressive. After a dementia-related incident at the hospital, McCormac needed to be transferred to a care facility to keep herself and others safe, and Empire Ranch was the only realistic option. On the day of McCormac's admission, Pawloski presented Zenker "with a stack of paperwork to sign," including the 24-page resident admission agreement on a preprinted form. Given the circumstances, Zenker had little choice but to sign the agreement. (See *Dougherty v. Roseville Heritage Partners, supra*, 47 Cal.App.5th at pp. 103-104 [finding an arbitration agreement that was provided on a preprinted form as part of a 70-page admission packet provided to decedent's daughter on the day of admission oppressive].)

The arbitration clause also contains an element of unfair surprise. This element is well illustrated in *Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311 (*Lopez*). There, the decedent's daughter signed an arbitration agreement with the care facility as her representative. (*Id.* at p. 313.) The agreement required the daughter to arbitrate all claims brought in her individual capacity. (*Id.* at pp. 320-321.) But this language was " 'inserted into the arbitration agreement without headings or highlighting.' " (*Ibid.*) "Nowhere does the agreement warn that a person who signs as a resident's representative or agent is agreeing to be bound in his or her individual capacity and representative capacity." (*Id.* at p. 321.) The arbitration clause "contains no heading or other warning that it includes a provision waiving the individual trial rights of one who signs the agreement as a resident's representative or agent. Nor does the signature block warn of the purported *dual* capacity in which the representative is signing." (*Ibid.*) As such, "the

6

brevity of the arbitration agreement and the fact it contained boldface and red lettering does not overcome the fact the agreement on its face is between a *resident* and the facility." (*Ibid.*) Therefore, the *Lopez* court concluded the agreement as procedurally unconscionable as to the daughter. (*Ibid*.)

Similar to *Lopez*, the resident admission agreement and the arbitration clause are on their face between McCormac and Empire Ranch. Zenker is identified as McCormac's "Responsible Party" throughout the agreement in initial lines and signature blocks, including in the signature block for the arbitration clause. The jury trial waivers for Zenker and McCormac's other successors in interest are scattered throughout the half-page arbitration clause without headings or highlighting. Nothing in the arbitration clause calls out to Zenker that she was signing an agreement to arbitrate her and other plaintiffs' individual claims.

Pawloski declared that he explained the arbitration process to Zenker and informed her that "any dispute regarding Carol McCormac's admission" would be resolved in arbitration instead of at trial. He further told Zenker that she was not required to sign the arbitration clause and that she could withdraw the arbitration clause within 30 days of signing. Pawloski, however, did not inform Zenker that any individual claims brought by her or McCormac's other successors in interest would also need to be arbitrated or that the arbitration clause could be negotiated. Pawloski's selective explanation could lead Zenker, who has no legal background, to believe that his representation covered all material terms of the arbitration clause. Therefore, the arbitration clause is procedurally unconscionable as to plaintiffs.

Zenker's ability to withdraw from the arbitration clause within 30 days of signing does not prevent us from scrutinizing or overturning the clause. (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 470, disapproved on another ground in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 366.) An arbitration agreement with an opt-out provision may still be procedurally unconscionable where the failure to

7

opt out "did not represent an authentic informed choice." (*Gentry*, at p. 470.) Here, as discussed above, Zenker's failure to withdraw from the arbitration clause was not "an authentic informed choice" when she had little option to care for McCormac other than Empire Ranch, the jury trial waivers are hidden in the prolix form prepared by defendants, and defendants made no efforts to alert Zenker of the waivers.

B.      *Substantive Unconscionability*

"[T]he paramount consideration in assessing conscionability is mutuality." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 657.)  "Substantively unconscionable terms . . . may generally be described as unfairly one-sided." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.)  But " ' "unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." ' " (*Armendariz, supra*, 24 Cal.4th at pp. 117-118.)  A 24-hour skilled nursing facility's arbitration agreement is "clearly 'one-sided' " when it "requires residents to arbitrate those claims they are most likely to bring against the Facility (medical malpractice, personal injury, elder abuse) while allowing the Facility to pursue in court the actions the Facility is most likely to bring against residents (evictions and collections)." (*Lopez, supra*, 39 Cal.App.5th at pp. 321-322.)

The arbitration clause here requires arbitration of "any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at the Facility . . . including, without limitation, personal injury or wrongful death claims."  It provides exceptions for "any claim or dispute involving unlawful detainer proceedings (eviction) or any claims that can be brought in small claims court."  The claims related to the care and services provided by Empire Ranch are most likely, if not exclusively, brought by residents.  On the other hand, the claims that could be filed in small claims court are most likely brought by Empire Ranch.

Defendants argue the arbitration clause does not lack mutuality because they are also required to arbitrate actions relating to damages done to the facility's property by the

residents or violation of the resident admission agreement (obligating residents to reimburse Empire Ranch for repairs and unapproved alterations to their apartments). But many of these claims may indeed be brought in small claims court, which has jurisdiction to hear actions for monetary damages not exceeding $5,000. (Code Civ. Proc., § 116.220, subd. (a)(1).) Defendants provide no justification for this exception. (See *Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1057-1058 ["[T]he drafter of a one-sided arbitration provision must provide 'at least some reasonable justification for such one-sidedness based on "business realities." ' "].) We therefore conclude the arbitration clause lacks mutuality.[1]

The unconscionable one-sidedness of the arbitration clause is compounded in this case by the fact that it may require plaintiffs to pay prohibitively high arbitration fees and costs. "[W]here a consumer enters into an adhesive contract that mandates arbitration, it is unconscionable to condition that process on the consumer posting fees he or she cannot pay. It is self-evident that such a provision is unduly harsh and one-sided, defeats the expectations of the nondrafting party, and shocks the conscience . . . . To state it simply: it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89-90.)

Here, plaintiffs' counsel estimated the arbitration fees would be between $138,600 and $161,200, excluding any additional fees for incidental professional time. Defendants do not dispute the accuracy of this estimate. But they appear to contend that the clause does not require them to bear the arbitration fees and costs for McCormac in an elder abuse action. Under the arbitration clause, McCormac could be required to pay one-half

---

[1] Defendants also argue that the carve-out for unlawful detainer claims is necessary because they cannot compel residents to arbitrate unlawful detainer claims. We need not address this, as the small claims carve-out sufficiently supports our conclusion.

of the total arbitration fees, between $69,300 and $80,600. But her estate consists of only $30,000 in cash, which must cover attorney's fees in a different lawsuit, and two real properties that cannot realistically be sold promptly. Even if the $30,000 could all be used to pay for the arbitration, it still would not cover half of McCormac's share of the fees. The arbitration clause is thus substantively unconscionable because it "effectively blocks every forum for the redress of disputes, including arbitration itself" by imposing prohibitively high fees on McCormac. (*Gutierrez v. Autowest, Inc., supra*, 114 Cal.App.4th at p. 90.)

Defendants contend the arbitration clause is not substantively unconscionable because it allows plaintiffs to recover attorney fees and costs under Welfare and Institutions Code section 15657. Therefore, the clause is valid under *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1. This argument confuses the public policy analysis and the substantive unconscionability analysis. An arbitration clause that waives plaintiffs' unwaivable statutory right to attorney's fees and costs under Welfare and Institutions Code section 15657 is invalid because it violates public policy. (*Bickel,* at pp. 12-13.) On the other hand, an arbitration clause that requires plaintiffs to pay fees exceeding their ability to pay is substantively unconscionable. (*Gutierrez v. Autowest, Inc., supra*, 114 Cal.App.4th at pp. 90-91.)

Having concluded the arbitration clause is unconscionable, we need not decide whether the procedural provisions of the Federal Arbitration Act apply. (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 125; *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939.)

C.      *Severance*

Defendants contend that even if we found the arbitration clause unconscionable as to plaintiffs, the proper remedy is to sever plaintiffs' individual claims from their successor claims. We disagree.

A trial court may also refuse to enforce an arbitration agreement if it is permeated by unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 122.) "One relevant factor in assessing severability is whether the agreement contains more than one objectionable term." (*Abramson v. Juniper Networks, Inc., supra*, 115 Cal.App.4th at p. 666.) "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.' " (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 826.) "When an arbitration agreement is 'permeated' by unconscionability the decision whether to sever the objectionable clauses or refuse to compel arbitration is within the trial court's exercise of discretion." (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1149.)

Here, as discussed above, the arbitration clause is procedurally unconscionable and contains substantively unconscionable terms. Severing plaintiffs' individual claims from their successor claims will not cure other defects such as the lack of mutuality or the allocation of fees. "We cannot save the contract by simply hacking off the provisions governing what claims are arbitrable, how fees and costs will be allocated . . . . If we did so there would be virtually nothing of substance left to the contract. Instead, we need to rewrite those provisions according to what *we* believed was fair and equitable. This, of course, we cannot do." (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 185-186.) The trial court thus acted within its discretion to find that the arbitration clause was permeated by unconscionability and that severance is inappropriate.

## DISPOSITION

The trial court's order denying defendants' petition to compel arbitration is affirmed. Plaintiffs shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


                                        _____

                                        MESIWALA, J.


We concur:


_____

EARL, P. J.


_____

KEITHLEY, J.*

---

\* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.