[No. F062443. Fifth Dist. May 21, 2012.]

BRUCE BICKEL, as Trustee, etc., Plaintiff and Respondent, v.
SUNRISE ASSISTED LIVING, Defendant and Appellant.

4

**COUNSEL**

Supple & Canvel and John L. Supple for Defendant and Appellant.

Lang, Richert & Patch, William T. McLaughlin II and Thomas G. McLaughlin for Plaintiff and Respondent.

**OPINION**

**KANE, J.**—Plaintiff Ruth Chappell[1] filed a lawsuit alleging that defendant Sunrise Senior Living Management, Inc., also known as Sunrise Assisted Living, violated the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.; the Elder Abuse Act),[2] concerning its

[1] Following Ruth Chappell's death, the instant action was maintained by Bruce Bickel, as trustee of the Ruth N. Chappell Revocable Trust dated June 28, 2005.

[2] Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

care of plaintiff while she was a resident at defendant's assisted living facility (Sunrise). At the time of plaintiff's admission to Sunrise, she entered into a residency agreement that included an arbitration clause.[3] In response to plaintiff's lawsuit, defendant petitioned the trial court to compel arbitration of plaintiff's elder abuse claims pursuant to the residency agreement. The trial court granted the petition, but severed one provision of the arbitration clause that specified each party would bear its own attorney fees and costs in the arbitration. The trial court severed that provision on the ground that it was contrary to public policy, since the Elder Abuse Act specifically called for recovery of attorney fees and costs to prevailing plaintiffs (§ 15657) to effectuate the important public purposes of the law. The case proceeded to arbitration, plaintiff prevailed on her claims under the Elder Abuse Act and the arbitrator awarded compensatory and punitive damages. In addition, the arbitrator awarded plaintiff the sum of $666,725.30 in attorney fees and $94,694.70 in costs pursuant to section 15657, part of the Elder Abuse Act. After the arbitration award was confirmed and judgment was entered by the trial court, defendant filed the instant appeal challenging the trial court's decision to sever the attorney fees and costs waiver. Because we agree that the waiver in the residency agreement of plaintiff's statutory right to recover attorney fees and costs under section 15657 was contrary to public policy, we will affirm.

## FACTS AND PROCEDURAL HISTORY

On May 27, 2008, plaintiff filed her complaint for damages alleging several violations of the Elder Abuse Act. The complaint asserted that during the period from March 3 until July 21, 2006, plaintiff was a resident at the assisted living facility operated by defendant referred to as Sunrise. While a resident at Sunrise, defendant allegedly engaged in conduct constituting elder abuse of plaintiff. Such conduct allegedly included leaving plaintiff unattended and isolated in her room for prolonged amounts of time resulting in dehydration, ignoring plaintiff's calls for help or assistance, and failing to respond to plaintiff's basic health and personal hygiene needs. Allegedly, defendant's conduct was committed with recklessness, oppression, fraud, or malice and thus came within the scope of section 15657. Section 15657 provides in part: "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63, or neglect as defined in Section 15610.57, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law: [¶] (a) The court shall award to the plaintiff reasonable attorney's fees and costs."

---

[3] For convenience, we sometimes refer to the arbitration clause of the residency agreement as simply the "arbitration agreement."

On September 2, 2008, defendant filed its petition under Code of Civil Procedure section 1281.2 to compel arbitration of plaintiff's claims pursuant to the parties' agreement. Specifically, the residency agreement entered by the parties on or about March 30, 2006, provided in article VI, paragraph X, under the heading "Arbitration," as follows: "By entering into this Agreement, you agree that any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at this Community shall be resolved by submission to neutral, binding arbitration; except that any claim involving unlawful detainer actions (eviction) or any claims that are brought in small claims court shall not be subject to arbitration unless both parties agree to arbitrate such proceedings. Both parties give up their constitutional rights to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration. The arbitration shall be conducted in Fresno County, California, by a single neutral arbitrator selected as provided in the California Code of Civil Procedure, unless otherwise mutually agreed. In reaching a decision, the arbitrator shall prepare findings of fact and conclusions of law. *Each party shall bear its own costs and fees in connection with the arbitration.*" (Italics added.)

Plaintiff opposed the petition to compel arbitration on the ground that the above arbitration terms were unconscionable and/or contrary to public policy. Plaintiff argued the entitlement to attorney fees and costs under the Elder Abuse Act was a substantive statutory remedy designed to increase the likelihood that attorneys would take elder abuse cases and ensure that victimized seniors would receive adequate representation. According to plaintiff's opposition, that policy would be undermined if arbitration could be ordered while at the same time the trial court enforced a provision that each party bear his or her own costs and fees. At oral argument, plaintiff argued further that the provision relinquishing attorney fees recovery was contrary to public policy to the extent that it resulted in a waiver of statutory rights that were intended to be "unwaivable." Plaintiff pointed out that if the substantive remedies in the Elder Abuse Act were waivable in this manner, "every facility would just include [a provision to] 'waive attorney fees,' " which plaintiff argued would impede the goals of the Elder Abuse Act. In its reply, defendant countered that arbitration is favored under state and federal law, and that the waiver provision was a matter of the freedom of contract that should not be disturbed by the courts. After oral argument, the trial court took the matter under submission.

In September 2008, the trial court issued its written order granting the petition to compel arbitration. The trial court found that plaintiff failed to prove that the arbitration agreement was procedurally or substantively unconscionable. However, as noted, the trial court *did* find the discrete provision waiving recovery of attorney fees and costs to be in violation of the public

policy embodied in the Elder Abuse Act, and the court severed that waiver provision. The trial court explained this aspect of its ruling as follows: "[T]he arbitration provision does provide for what is in effect a waiver of plaintiff's right to recover, under certain circumstances, attorneys' fees under the Elder Abuse Act. To that extent, it is contrary to public policy and unlawful. [Citation.] This does not require a finding that the arbitration agreement as a whole is unlawful as it is not 'permeated with unconscionability.' (*Armendariz*[ *v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83,] 122 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Rather this provision of the agreement can be, and is, severed and the remainder of the agreement enforced. (Civ. Code § 1670.5[, subd. ](a); *Armendariz*, at pp. 121–122.)" In accordance with this determination, the trial court ordered the case to arbitration but held that "plaintiff shall be entitled to assert all rights and claim all remedies available to her under the Elder Abuse Act" and "the provision of the agreement requiring the parties to bear their own fees and costs is severed from the agreement and the parties will have such right to attorneys' fees and costs as are provided for in and consistent with the Elder Abuse Act."

Arbitration of plaintiff's causes of action was duly conducted in September and October 2009 before a neutral arbitrator. In March 2010, the arbitrator issued an interim arbitration award regarding plaintiff's elder abuse claims. The arbitrator found clear and convincing evidence of elder abuse based on, among other things, (1) failure to make more prompt discovery of plaintiff's dangerously low blood pressure and failure to take prompt action to obtain medical care to assist plaintiff after such discovery was made; (2) failure to respond to plaintiff's numerous emergency calls for help in a timely fashion and failure to notify plaintiff's family of the frequency of plaintiff's calls for help; and (3) failure to notify plaintiff's family of her falls on June 16 and July 15, 2006. As compensatory damages, the arbitrator awarded special damages of $1,954.96 and general damages in the amount of $125,000. In addition, the arbitrator found by clear and convincing proof that plaintiff was entitled to recover punitive damages for defendant's conduct, which the arbitrator described as "reckless conduct conducted with malice and oppression." Punitive damages were awarded in the amount of $187,500.

The arbitrator further held that plaintiff was entitled to an award of attorney fees and costs under the Elder Abuse Act, the amounts to be determined at a subsequent hearing. On November 23, 2010, after a separate hearing to determine the issue of attorney fees and costs, the arbitrator awarded plaintiff the sum of $666,725.30 in attorney fees and $94,694.70 in costs. On January 11, 2011, the arbitrator issued a final arbitration ruling, incorporating all the prior interim rulings therein.

On January 19, 2011, a "JUDGMENT CONFIRMING CONTRACTUAL ARBITRATION AWARD" was entered by the trial court. Defendant's appeal followed.

## DISCUSSION

Defendant contends that the trial court erred when it severed the provision in the arbitration agreement that "[e]ach party shall bear its own costs and fees in connection with the arbitration." According to defendant, enforcement of that provision against plaintiff was not contrary to the public policy of the Elder Abuse Act. As more fully explained below, we disagree with defendant and affirm the trial court's decision to sever that provision in this case.

### I. *Nature of the Issue and Standard of Review*

█ Under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (*Armendariz v. Foundation Health Psychcare Services, Inc., supra*, 24 Cal.4th at p. 98 (*Armendariz*).) Whether "[g]rounds exist for the revocation of the [arbitration] agreement" (Code Civ. Proc., § 1281.2, subd. (b)) based on "grounds as exist for the revocation of any contract" (*id.*, § 1281) is ordinarily for the courts to decide, not an arbitrator. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [64 Cal.Rptr.2d 843, 938 P.2d 903].) This includes the determination of whether arbitration agreements or portions thereof are deemed to be unconscionable or contrary to public policy. (See, e.g., *Armendariz, supra*, at pp. 100–104 [a waiver of remedies under FEHA[4] found contrary to public policy]; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 [130 Cal.Rptr.2d 892, 63 P.3d 979]; *Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1530 [22 Cal.Rptr.3d 441] [question of unconscionability of arbitration agreement a gateway issue resolved by the court].)

█ Civil Code section 3513 states: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." In *Armendariz*, the California Supreme Court explained that rights established by statute for a public purpose are *unwaivable* and that a waiver of such rights in a predispute arbitration agreement is contrary to public policy. (*Armendariz, supra*, 24 Cal.4th at pp. 100–104.)[5] Specifically, the Supreme Court held that statutory

---

[4] California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA).

[5] The particular context of the waiver of statutory rights in *Armendariz* was a mandatory employment arbitration agreement, and the Supreme Court sought to ensure that such agreements were not used as a means of curtailing employees' FEHA rights. (*Armendariz, supra*, 24 Cal.4th at p. 103, fn. 8.) To ensure that these statutory rights were fully vindicated in the arbitral forum, certain requirements were found to be implicitly part of the agreement to

rights and remedies under FEHA were established for a public reason (*Armendariz, supra,* at p. 100) and, therefore, "an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA" (*id.* at p. 101). To do so would be contrary to public policy and unlawful. (*Id.* at pp. 100–101.) ■ Later in the same opinion, the Supreme Court indicated that unless a contract is permeated by unconscionability or by an unlawful purpose, the offending provision should ordinarily be *severed* from the arbitration agreement and the remainder of the agreement enforced. (*Id.* at pp. 121–127.) "Generally speaking, when an arbitration agreement contains a single term in violation of public policy, that term will be severed and the rest of the arbitration agreement enforced." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 466 [64 Cal.Rptr.3d 773, 165 P.3d 556].)

■ Whether a particular term violates public policy by seeking to waive a statutory right or remedy established " 'for a public reason' " is a question that necessarily entails our discernment of legislative intent. (*Armendariz, supra,* 24 Cal.4th at pp. 100–102.) In some cases, statutory rights are made expressly unwaivable (see, e.g., Civ. Code, § 1751 [waiver of rights under Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) contrary to public policy and void]). In other cases, whether a statutory right can be waived may be implied from the context and purpose of the statute. (*Armendariz, supra,* at pp. 100–101 [nonwaivability of FEHA rights deduced from strong public policy against employment discrimination].)[6] In each case, it is incumbent upon the court to determine whether the statute in question is for public or private benefit. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 679, p. 764.) For these reasons, the issue of whether the waiver of statutory rights violated public policy presents a legal issue that we review de novo.[7]

---

arbitrate FEHA causes of action. (*Armendariz, supra,* at pp. 103–113.) The Supreme Court added: "These requirements would generally not apply in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement after a dispute has arisen. In those cases, employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights. Absent such freely negotiated agreements, it is for the courts to ensure that the arbitration forum imposed on an employee is sufficient to vindicate his or her rights under the FEHA." (*Id.* at p. 103, fn. 8.)

[6] *Armendariz* involved a statutory scheme (FEHA) that did not have an express nonwaiver provision; thus, contrary to defendant's argument, the absence of an express nonwaiver provision is not dispositive.

[7] We acknowledge our reliance on the discussion in *Sonic-Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, 678–679 [121 Cal.Rptr.3d 58, 247 P.3d 130] in describing the nature of the issue before us and the standard of review. For unrelated reasons, the judgment in *Sonic-Calabasas* was recently vacated by the United States Supreme Court for further consideration in light of *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740]. (See *Sonic-Calabasas A, Inc. v. Moreno* (2011) 565 U.S. ___ [181 L.Ed.2d 343, 132 S.Ct. 496].)

## II. *Attorney Fees and Costs Recovery in Elder Abuse Act*

We now consider the Elder Abuse Act, and in particular the attorney fees and costs remedy in section 15657, to determine whether the trial court correctly concluded that the contractual provision in question (a waiver of recovery of attorney fees and costs in connection with arbitration of elder abuse claims) was contrary to public policy.

■ In section 15600, part of the Elder Abuse Act, the Legislature expressed its findings and intent in enacting the law. It declared that "The Legislature recognizes that elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect these persons." (§ 15600, subd. (a).) The Legislature found that the elderly and other dependent adults are particularly vulnerable to such abuse and neglect (*id.*, subds. (b)–(e)), and are a disadvantaged class because "cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits" (*id.*, subd. (h), added by Stats. 1991, ch. 774, § 2, p. 3476). In 1991, the Legislature announced its intention to rectify the problem of lack of incentive to prosecute civil suits, and the primary solution offered to correct that problem was the passage of section 15657: "It is the . . . intent of the Legislature in adding Article 8.5 (commencing with Section 15657) to this chapter to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (§ 15600, subd. (j), added by Stats. 1991, ch. 774, § 2, p. 3476.)

Section 15657 provides the following enhanced civil remedies, including recovery of attorney fees and costs, in certain cases of elder abuse or neglect:

"Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63, or neglect as defined in Section 15610.57, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:

"(a) The court shall award to the plaintiff reasonable attorney's fees and costs. The term 'costs' includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article.

"(b) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.

"(c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."

■ The purpose of the enhanced civil remedies in section 15657, including the recovery of attorney fees, was discussed in *Delaney v. Baker* (1999) 20 Cal.4th 23 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*). In *Delaney*, the Supreme Court explained that initially, the Elder Abuse Act relied on reporting and use of law enforcement to combat elder abuse. However, when the Legislature amended the Elder Abuse Act in 1991 to include heightened civil remedies, "the focus shifted to private, civil enforcement of laws against elder abuse and neglect." (*Delaney, supra*, at p. 33.) The court noted the Legislature's express findings that infirm elderly persons and dependent adults are a vulnerable and disadvantaged class, and that few civil cases are brought in connection with such abuse and neglect due to problems of proof, court delays, and the lack of incentives to prosecute civil suits. (*Ibid.*, citing § 15600, subd. (h).) The court further noted that in creating the heightened civil remedies, the Legislature intended to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults. (*Delaney, supra*, at p. 33, citing § 15600, subd. (j) and *ARA Living Centers-Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1560 [23 Cal.Rptr.2d 224].) The discussion in *Delaney* also emphasized the following item of legislative history regarding enactment of the heightened civil remedies: "As was stated in the Senate Rules Committee's analysis of Senate Bill No. 679, 'in practice, the death of the victim and the difficulty in finding an attorney to handle an abuse case where attorneys fees may not be awarded, impedes many victims from suing successfully. [¶] *This bill would address the problem by*: . . . authorizing the court to award attorney's fees in specified cases; [and by] allowing pain and suffering damages to be awarded when a verdict of intentional and reckless abuse was handed down after the abused elder dies.' (Sen. Rules Com., Analysis of Sen. Bill No. 679 (1991–1992 Reg. Sess.) as amended May 8, 1991, p. 3.)" (*Delaney, supra*, at p. 33, italics added.) As a later Supreme Court case aptly summarized, the Legislature, in its effort to protect a particularly vulnerable portion of the population from abuse and neglect, "added to the [Elder Abuse] Act heightened civil remedies for egregious elder abuse, seeking thereby 'to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults.' [Citation.]" (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 787 [11 Cal.Rptr.3d 222, 86 P.3d 290].)

In summary, the heightened remedies enacted in section 15657 were remedial measures designed to correct a significant problem affecting a highly vulnerable segment of our society. That is, elders and dependent adults were

not being adequately protected from abuse and neglect under existing law because there was little incentive for attorneys to take such cases. As a solution, the heightened remedies (including attorney fees and costs) were established by the Legislature as an essential vehicle to better protect these needy individuals. We conclude that section 15657, including the attorney fees and costs recovery provided therein, was enacted to carry out an important *public* purpose: that of protecting an especially vulnerable portion of our population—elders and dependent adults—by creating civil incentives for attorneys to represent victims of egregious abuse and neglect. (*Delaney, supra,* 20 Cal.4th at p. 33; *Covenant Care, Inc. v. Superior Court, supra,* 32 Cal.4th at pp. 784–785, 787.)

### III. *The Waiver Was Contrary to Public Policy*

■ We reiterate the basic principle declared in Civil Code section 3513: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." In the discussion above, we have shown that section 15657, part of the Elder Abuse Act, including its provision for recovery of attorney fees and costs, was designed to accomplish an important public purpose. Therefore, the rights established in section 15657 were unwaivable and, as a result, the arbitration agreement in the instant case could not be used as a vehicle for the waiver of such important statutory rights. (*Armendariz, supra,* 24 Cal.4th at pp. 100–104.) ■ Where a provision in an arbitration agreement seeks to waive such rights, as was the case here, the provision is contrary to public policy and may be severed. (*Armendariz, supra,* at pp. 101, 104, 121–127; *Gentry v. Superior Court, supra,* 42 Cal.4th at p. 466.)[8]

■ The waiver in question was contained in the arbitration clause of the residency agreement by which plaintiff was admitted into defendant's care. It is clear from the scope of the arbitration clause, which included "any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at this Community," that it was intended to cover causes of action for elder abuse. If enforced, it would have left plaintiff, at the time she began her residency in defendant's assisted living facility, bereft of the statutory right to recover attorney fees and costs under the Elder Abuse Act. Moreover, the enforcement of this waiver—and of others like it if the

---

[8] As occurred here, an agreement to arbitrate may still be enforced after severing the offending provision, assuming the substantive and remedial provisions of the statute are fully vindicated in the arbitral forum. (*Armendariz, supra,* 24 Cal.4th at p. 103.) " 'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1084 [90 Cal.Rptr.2d 334, 988 P.2d 67], quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628 [87 L.Ed.2d 444, 105 S.Ct. 3346].)

practice were judicially approved—would undermine the *public* purpose of section 15657, part of the Elder Abuse Act, which is to protect vulnerable elders and dependent adults by providing sufficient incentives to encourage private civil actions in cases of abuse or neglect. For these reasons, we conclude that the waiver of plaintiff's statutory right to attorney fees and costs under the Elder Abuse Act was contrary to public policy and, therefore, the trial court correctly severed that provision from the residency agreement.[9]

We note that our decision is limited to the particular statute and waiver before us. We do not hold or suggest that every time the Legislature seeks to encourage private enforcement of a statute by providing for attorney fees recovery, the fees provision is · unwaivable. As noted above, whether a statutory right is unwaivable is a question that must be determined based on the context and purpose of the specific statute under consideration. We emphasize that the statutory remedies at issue here (§ 15657) were established to protect the particularly weak and vulnerable from egregious wrongdoing, and that such remedies were enacted after other methods of enforcement had proven inadequate (§ 15600, subds. (h) & (j)). As should be obvious by the terms of section 15657, it is not an ordinary attorney fees statute. A plaintiff is not entitled to attorney fees under section 15657 by merely proving the existence of elder abuse or neglect. Rather, attorney fees recovery and other heightened civil remedies are reserved for those cases where a plaintiff is able to prove by an elevated standard ("clear and convincing evidence") that the defendant (i) committed abuse or neglect under the Elder Abuse Act *and* (ii) was guilty of recklessness, oppression, fraud, or malice in the commission of such abuse. Thus, a plaintiff is entitled to attorney fees only in cases of reprehensible wrongdoing. We do not think the Legislature intended to allow an advance (predispute) waiver of this attorney fees remedy that was enacted to protect the vulnerable elderly from conduct of such an egregious nature.

Because in enacting section 15657 the Legislature intended to implement the important public purpose of protecting elders and dependent adults from egregious abuse and neglect, and because the means it employed to accomplish that purpose was the creation of enhanced civil remedies—of which the right to recover attorney fees and costs was an essential part—we conclude that the waiver in the residency agreement of plaintiff's right to recover attorney fees and costs under section 15657, part of the Elder Abuse Act, was a violation of public policy.

---

[9] As noted by *Armendariz* in the context of FEHA, "[t]he principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed." (*Armendariz, supra,* 24 Cal.4th at p. 103.)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to plaintiff.

Levy, Acting P. J., and Cornell, J., concurred.

On June 18, 2012, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 8, 2012, S203716.