Filed 9/16/24  Kourtakis v. Capistrano Beach Care Center CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PAMELA KOURTAKIS, | |
| Plaintiff and Respondent, | G062935 |
| v. | (Super. Ct. No. 30-2021-01205006) |
| CAPISTRANO BEACH CARE CENTER, LLC et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, David J. Hesseltine, Judge. Reversed and remanded with directions.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Tracy D. Forbath, Suzanne L. Schmidt, Kathleen M. Walker and Jeffrey S. Healey for Defendants and Appellants.

Law Offices of Felicia C. Curran and Felicia C. Curran for Plaintiff and Respondent.

Plaintiff Pamela Kourtakis filed a complaint against Capistrano Beach Care Center, LLC and Cambridge Healthcare Services, LLC (collectively, the Capistrano defendants), asserting claims both in her capacity as successor in interest to her deceased mother, Lucille Kourtakis, and in her individual capacity.[1] The complaint alleges Lucille passed away after residing for approximately seven months at a skilled nursing facility that was owned and operated by the Capistrano defendants (the facility). The Capistrano defendants appeal from an order denying their petition to compel arbitration of Pamela's individual claims.

This is the second appeal in this matter. The Capistrano defendants previously petitioned to compel arbitration of all claims contained in the complaint based on an arbitration agreement signed by Pamela but not by Lucille; the trial court denied the petition. In the first appeal, a panel of this court affirmed the order denying the petition as to Pamela's claims as successor in interest to Lucille but remanded to the trial court to determine whether Pamela's individual claims must be arbitrated. (*Kourtakis v. Capistrano Beach Care Center, LLC et al.* (Feb. 2, 2023, G060922) [nonpub. opn.] (*Kourtakis I*).) On remand, following supplemental briefing by the parties, the trial court denied the petition as to Pamela's individual claims on the ground the arbitration agreement was unconscionable.

We reverse. The trial court erred by concluding the arbitration agreement was substantively unconscionable and denying the petition to compel arbitration of Pamela's individual claims on that basis. We remand with directions for the trial court to determine, in the first instance, whether

_____

[1] As Pamela and Lucille Kourtakis share the same last name, we refer to them by their first names; we intend no disrespect.

2

any of the other arguments raised by Pamela in her opposition to the petition has merit.

## FACTUAL AND PROCEDURAL HISTORY

### I.

### THE COMPLAINT

In June 2021, Pamela filed a complaint against the Capistrano defendants. We summarize the allegations of the complaint relevant to the issues presented in this appeal as follows. Lucille was admitted to the facility for rehabilitation after she broke her shoulder. Lucille's weight dropped 20 pounds during the approximately seven-month period she resided at the facility. During a visit on July 5, 2020, Pamela purportedly saw Lucille "cough repeatedly, gasp for air, try to catch her breath, and throw up." Pamela "was in a panic because she knew that [Lucille] needed emergency treatment at the hospital, but the [n]urse was giving her push back and would not agree to let [Lucille] be transported to the hospital." Pamela took Lucille to the hospital, where Lucille was diagnosed with, among other things, respiratory distress and severe protein and calorie malnourishment. Lucille passed away on July 22, 2020.

The complaint asserts claims for wrongful death and negligent infliction of emotional distress by Pamela in her individual capacity. It also asserts claims in her capacity as Lucille's successor in interest for (1) reckless or willful neglect of an elder in violation of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.; Elder Abuse Act) and (2) violation of the Patient Bill of Rights (Health & Saf. Code, § 1430, subd. (b)).

## II.

### THE PETITION TO COMPEL ARBITRATION

The Capistrano defendants filed a petition to compel arbitration (the petition) based on a two-page arbitration agreement, entitled "RESIDENT–FACILITY ARBITRATION AGREEMENT," which Pamela signed on Lucille's behalf and "as an Individual" (Agreement). (Boldface omitted.) On the first page of the Agreement, the line designated for "Resident Name" is blank, as are two lines designated for "Initials." The Agreement also states on the first page: "Residents shall not be required to sign this arbitration agreement as a condition of admission to this facility." The Agreement contains eight articles, two of which are most relevant to this appeal.

First, Article 4 provides: "This Agreement shall be binding for any dispute, except for disputes pertaining to collections or evictions. This Agreement is binding on all parties, including the Resident's representatives, executors, family members, and heirs who bring any claims individually or in a representative capacity. The Resident's representatives, agents, executors, family members, successors in interest and heirs who execute this Agreement below on the signature line are doing so not only in their representative capacity for the Resident, but also in their individual capacity and thus agree that any claims brought individually by any such representatives, agents, executors, family members, representatives, successors in interest and heirs are subject to binding arbitration. This Agreement may be rescinded by written notice within thirty (30) days of signature."

Second, Article 6 provides: "Resident and Facility agree that California substantive law, including California Code of Civil Procedure §667.7 and Civil Code §§3333.1-3333.2 applies to any and all claims arising

4

out of the care, treatment and services provided to the Resident by the Facility. The parties agree that California Code of Civil Procedure §1281.2(c) is excluded from this Agreement as the parties mutually desire to have any and all disputes submitted to binding arbitration. The parties do not want any claims not subject to arbitration to impede any and all other claims from being ordered to binding arbitration. The expenses and fees of the arbitrator(s) shall be apportioned equally among all parties except as otherwise permitted by law."

The Agreement concludes with two notices written in red font. The first notice provides: "By signing this contract you are agreeing to have any issue of medical malpractice decided by neutral arbitration and you are giving up your right to a jury or court trial. See Article 1 of this contract." (Boldface and some capitalization omitted.) The second notice provides: "By signing this contract you are agreeing to have all claims, including claims other than a claim for medical malpractice, decided by arbitration and you are giving up your right to a jury or court trial and you agree that no party shall adjudicate any claim on a class action basis." (Boldface and some capitalization omitted.)

Pamela's signature appears on the line labeled under each notice as "Signature on behalf of the Resident and as an Individual[.]" Signatures appear on the corresponding lines labeled for the facility representative. The line under each notice labeled "Resident's Signature" is blank.

III.

THE TRIAL COURT DENIES THE PETITION AND THE CAPISTRANO DEFENDANTS APPEAL; THE APPELLATE COURT AFFIRMS IN PART AND REMANDS THE MATTER

The trial court denied the petition as to Pamela's claims made in her capacity as successor in interest to Lucille on the ground Lucille had not

5

entered into the Agreement and the Capistrano defendants failed to show Pamela was authorized to enter the Agreement on Lucille's behalf. The trial court denied the petition as to the claims Pamela brought in her individual capacity by exercising its discretion under Code of Civil Procedure section 1281.2, subdivision (c)[2] to avoid inconsistent rulings.

On appeal, a panel of this court affirmed the order denying the petition as to the claims Pamela brought in her capacity as successor in interest to Lucille on the ground the Capistrano defendants failed to show the existence of a valid agreement to arbitrate Lucille's claims for elder abuse and violation of Health and Safety Code section 1430. (*Kourtakis I, supra,* G060922.) As to the claims Pamela brought in her individual capacity, the appellate court concluded the trial court erred by denying the petition based on section 1281.2, subdivision (c) before determining whether the Agreement was an enforceable agreement between the Capistrano defendants and Pamela. (*Kourtakis I, supra,* G060922.) The court then remanded the matter with directions that the trial court determine whether such an agreement exists and, if so, whether Pamela's individual claims are arbitrable under it. (*Ibid.*)

---

[2] Section 1281, subdivision (c) of the Code of Civil Procedure provides in part a trial court shall order arbitration of a controversy if it determines that an agreement to arbitrate the controversy exists unless it finds "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."

All further undesignated code sections are to the Code of Civil Procedure.

## IV.

## ON REMAND, THE TRIAL COURT CONCLUDES THE AGREEMENT IS UNENFORCEABLE AS UNCONSCIONABLE AND DENIES THE PETITION

Following remand, the Capistrano defendants filed supplemental briefing in support of the petition as to Pamela's individual claims. Pamela filed supplemental opposition to the petition, which included her declaration. In that declaration, Pamela described the circumstances surrounding her execution of the Agreement as follows: "Some time after [Lucille] moved into [the facility], I was asked to step into the office of a gentleman named Carlos at [the facility]. I am not sure of Carlos' exact title, but he is part of the business office of the facility. [Lucille] was not present for this conversation. Carlos had some papers, and he said, now that [Lucille] had moved in, they wanted me to sign the admitting paperwork. He did not give me an opportunity to read the papers, and he did not give me a copy of the papers. He did say that one of the papers was for arbitration, and he told me . . . where to sign. He did not tell me that I did not need to sign the papers. He said that everyone signs the papers. I did not know that I did not need to sign the arbitration papers in order for [Lucille] to stay there. I was afraid that they might ask [Lucille] to leave if I did not sign. I did not want to say or do anything that would make them not want to keep [Lucille] as a patient, because she needed rehabilitation therapies to recover from the shoulder injury. So I signed where he asked me to sign. Carlos is the only person from [the facility] that I recall speaking to regarding the arbitration paperwork." Pamela also said there was no money in her mother's estate.

The trial court denied the petition as to Pamela's individual claims after finding the Agreement was unconscionable and, thus, not enforceable against Pamela. Regarding procedural unconscionability, the

7

trial court recognized "Pamela declare[d] she thought she needed to sign the agreement to get care for her mother, she was not given time to read the agreement, she was not given a copy, and she signed where she was asked to sign." The trial court noted the Capistrano defendants did not provide any evidence to the contrary, and it found Pamela's version of events to be credible given there was no resident name or initials on the first page of the Agreement. The trial court found further support for procedural unconscionability because the Agreement was "captioned as 'Resident-Facility Arbitration Agreement,' [the Agreement] refers in Article 2 to 'any dispute between Resident and Capistrano,' Pamela's name was not on the agreement, and Article Four, which is the provision purporting to requiring [sic] Pamela to arbitrate claims in her individual capacity, was inserted into the agreement without any heading or highlighting to draw attention to it." The trial court noted the signature block's reference to "Signature on behalf of the Resident and as an Individual" reduced the amount of procedural unconscionability but did not eliminate it. Ultimately, the trial court concluded there was "a fair degree of procedural unconscionability."

The trial court also concluded there was a fair degree of substantive unconscionability. The trial court determined two provisions were substantively unconscionable: (1) the provision exempting "disputes pertaining to collections or evictions[,]" which the trial court described as being the most likely that the Capistrano defendants would bring against residents, and (2) the provision stating "[t]he expenses and fees of the arbitrator(s) shall be apportioned equally among all parties except as otherwise permitted by law." For these reasons, the trial court determined

8

the Agreement could not be enforced against Pamela as to her individual claims.

The Capistrano defendants filed a timely notice of appeal.

DISCUSSION

For the reasons we will explain, the trial court erred by denying the petition as to Pamela's individual claims on the ground the Agreement was unenforceable as unconscionable. While the Agreement had some degree of procedural unconscionability, it was devoid of substantive unconscionability.

I.

OVERVIEW OF THE UNCONSCIONABILITY DOCTRINE AND
THE APPLICABLE STANDARD OF REVIEW

""""[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*Ibid.*) There are thus both procedural and substantive elements. (*Ibid.*) Procedural unconscionability "'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power,'" and "'[s]ubstantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.'" (*Ibid.*) "[C]ourts are required to determine the unconscionability of the contract 'at the time it was made.'" (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 920.)

9

While "[b]oth procedural unconscionability and substantive unconscionability must be shown, . . . 'they need not be present in the same degree' and are evaluated on "'a sliding scale.'"" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*).) "'[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Ibid.*) "'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" (*OTO, supra,* 8 Cal.5th at p. 126.) Notably, "[t]he degree of unfairness required for unconscionability must be as rigorous and demanding for arbitration clauses as for any other contract clause." (*Id.* at p. 125.) As the party asserting unconscionability, Pamela has the burden of proving it. (See *id.* at p. 126.)

On appeal, the Capistrano defendants argue the trial court erred in denying the petition as to Pamela's individual claims because there is no procedural or substantive unconscionability. "Whether an agreement is unconscionable presents a question of law which we review de novo." (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 320 (*Lopez*).) However, ""factual issues may bear on that determination. [Citations.] Thus, to the extent the trial court's determination that the arbitration agreement was unconscionable turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard."" (*Ibid.*)

10

## II.

### THE AGREEMENT IS MODERATELY PROCEDURALLY UNCONSCIONABLE

"[P]rocedural unconscionability requires oppression or surprise. "'Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.'"'" (*Pinnacle, supra,* 55 Cal.4th at p. 247.) "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*OTO, supra,* 8 Cal.5th at pp. 126–127.)

We conclude the Agreement here has a moderate degree of procedural unconscionability. This court's decision in *Lopez, supra,* 39 Cal.App.5th 311 is instructive. In *Lopez,* the daughter of a deceased resident of a nursing facility sued the facility, among others, as successor in interest and individually. (*Id.* at pp. 313–314.) The daughter, but not the deceased resident, had signed a two-page arbitration agreement titled "RESIDENT-FACILITY ARBITRATION AGREEMENT" on a signature block labeled "Resident Representative/Agent Signature." (*Ibid.*) Article four of that arbitration agreement "purport[ed] to bind '*in their individual capacity*' any persons 'who execute this Agreement below on the "Resident Representative/Agent Signature" line,' thereby mandating arbitration of the representative's *individual* claims against the Facility and any claims brought in a representative capacity." (*Id.* at p. 314, fn. omitted.) *Lopez* determined the petition to compel arbitration was properly denied as to the

11

claims brought as successor in interest because the daughter had no authority to execute the arbitration agreement on behalf of the deceased resident. (*Id.* at pp. 317–320.) *Lopez* also concluded the arbitration agreement was unenforceable as to the daughter's individual claim because it was unconscionable. (*Id.* at pp. 320–322.)

As for procedural unconscionability, the appellate court in *Lopez, supra*, 39 Cal.App.5th at page 321 determined "the brevity of the arbitration agreement and the fact it contained boldface and red lettering does not overcome the fact the agreement on its face is between a *resident* and the facility. Nowhere does the agreement warn that a person who signs as a resident's representative or agent is agreeing to be bound in his or her individual capacity and representative capacity. Article four contains no heading or other warning that it includes a provision waiving the individual trial rights of one who signs the agreement as a resident's representative or agent. Nor does the signature block warn of the purported *dual* capacity in which the representative is signing."

The Agreement before us is similar to the one in *Lopez*. As in *Lopez*, the agreement appears on its face to be between the resident and the facility with the title "RESIDENT – FACILITY ARBITRATION AGREEMENT." (Boldface omitted.) And the Agreement's article four here similarly has no heading or warning regarding waiver of individual trial rights for one who signs. But there is a difference: the signature block here indicates: "Signature on behalf of the Resident and as an Individual." We agree with the trial court the signature block difference reduces but does not eliminate the procedural unconscionability. While the signature block may provide some warning of signing in a dual capacity, it does not alone make clear what exactly the signer is potentially waiving in his or her individual

12

capacity. Again, the title of the document indicates it is an arbitration agreement between the resident and facility.

Pamela's declaration provides further support for a finding of some degree of procedural unconscionability. Pamela stated in her declaration filed in opposition to the petition someone named Carlos at the facility brought her into his office, where he said "they wanted [her] to sign the admitting paperwork[,]" "did not give [her] an opportunity to read the papers," and "told [her] where to sign" and "everyone signs the papers."[3] The Capistrano defendants assert Pamela's declaration needed to provide more details about how the Capistrano defendants caused Pamela to not have enough time to review the Agreement, but the trial court credited Pamela's version of events and found the Capistrano defendants introduced no contrary evidence.

The Capistrano defendants argue the Agreement was not unconscionable because it did not constitute an adhesive contract. They point to language in cases where the "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113.) According to the Capistrano defendants, this means adhesion is a "foundational" issue, essentially arguing there can be no unconscionability unless there is an adhesive contract.

---

[3] The Capistrano defendants also suggest there is no procedural unconscionability because Pamela should be presumed to have read and fully understood the Agreement regardless of the circumstances. Their argument is unavailing as it would lead to virtually eliminating any surprise and oppression analysis, regardless of the circumstances.

13

"An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" (*OTO, supra,* 8 Cal.5th at p. 126.) The Capistrano defendants assert the Agreement was not an adhesive contract because it stated the resident was not required to sign as a condition of admission to the facility. The Capistrano defendants, however, are incorrect on the law. As a panel of this court has stated, "[a]dhesion is not a prerequisite for unconscionability." (*Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1409.)

III.

THE AGREEMENT IS NOT SUBSTANTIVELY UNCONSCIONABLE

"Substantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ""overly harsh""' [citation], "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience"""' [citation], or "unfairly one-sided""' (*OTO, supra,* 8 Cal.5th at pp. 129–130.) These descriptors "'point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party.""' (*Id.* at p. 130.) """"[T]he paramount consideration in assessing [substantive] conscionability is mutuality."""' [Citation.] Unilateral terms with 'overly harsh effect[s]' are the hallmark of substantive unconscionability." (*Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 662.)

Here, the trial court concluded two provisions in the Agreement were substantively unconscionable. First, the trial court determined there was substantive unconscionability because the Agreement exempted from arbitration "disputes pertaining to collections or evictions." Relying on *Lopez,*

14

*supra*, 39 Cal.App.5th 311, the trial court reasoned: "The agreement lacks mutuality because it requires *residents* to arbitrate those claims they are most likely to bring against the facility (medical malpractice, personal injury, elder abuse) while allowing the facility to pursue in court the actions it is most likely to bring against *residents* (evictions and collections), which is clearly 'one-sided,' benefitting only the facility, and thus rendering the agreement substantively unconscionable." (Italics added.)

In *Lopez, supra,* 39 Cal.App.5th at pages 321–322, the appellate court concluded a similar provision, which excepted from arbitration "disputes pertaining to collections or evictions," was substantively unconscionable. The appellate court rejected as frivolous an argument by the nursing facility that this provision did not benefit only the nursing facility, instead concluding "the provision is clearly 'one-sided,' benefiting only the [nursing] [f]acility, . . . [rendering] the agreement itself substantively unconscionable." (*Ibid*.)

The Capistrano defendants argue that part of the analysis in *Lopez, supra*, 39 Cal.App.5th 311 is inapplicable to the issue presented here—which is limited to whether the Agreement is substantively unconscionable as to Pamela's claims brought by her in her individual capacity only. The Agreement's carve-out for claims pertaining to collections and evictions does not result in a lack of mutuality between the Capistrano defendants and Pamela in her individual capacity because those claims are not the type of claim the Capistrano defendants would bring against her as an individual (as opposed to Lucille's successor in interest). Pamela is not a resident of the facility who could be evicted. Furthermore, nothing in the record suggests Pamela might be personally liable to the Capistrano defendants in a matter pertaining to collections. Pamela does not contend she

agreed to pay for any part of Lucille's stay at the facility (if, for example, insurance did not cover the costs).[4]

Second, the trial court found the Agreement substantively unconscionable based on the following provision: "The expenses and fees of the arbitrator(s) shall be apportioned equally among all parties except as otherwise permitted by law." The trial court explained: "The effect thereof would plainly be to impose a potentially substantial expense on any potential plaintiffs, including individuals attempting to assert claims for elder abuse." Relying on *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1 (*Bickel*), the trial court concluded: "Such a requirement, which could prevent meritorious claims from being prosecuted entirely, is contrary to public policy."

In *Bickel*, the plaintiff, who had been a resident at an assisted living facility, filed a lawsuit against that facility alleging several violations of the Elder Abuse Act. (*Bickel, supra,* 206 Cal.App.4th at pp. 4–5.) When that facility moved to compel arbitration, the plaintiff argued the agreement was unconscionable and contrary to public policy because she was entitled to seek the recovery of attorney fees and costs under the Elder Abuse Act but the agreement provided for each party to bear its own arbitration costs and fees. (*Id.* at p. 6.) Noting the right to recover attorney fees and costs pursuant to Welfare and Institutions Code section 15657 of the Elder Abuse Act is unwaivable, the appellate court "conclude[d] that the waiver of plaintiff's statutory right to attorney fees and costs under the Elder Abuse Act was contrary to public policy and, therefore, the trial court correctly severed that

---

[4] In the trial court, Pamela's counsel declared she was "informed and believe[d] that [Lucille's] stay at that facility was paid for by MediCal insurance."

16

provision from the residency agreement." (*Bickel, supra*, 206 Cal.App.4th at pp. 6, 13.) The *Bickel* court also noted its "decision is limited to the particular statute and waiver before [it]." (*Ibid.*)

Unlike *Bickel, supra*, 206 Cal.App.4th 1, the Agreement here does not require a waiver of any right to seek attorney fees and costs under the Elder Abuse Act. The Agreement provides for the splitting of expenses and fees of the arbitrator(s) "except as otherwise permitted by law." Significantly, Pamela does not argue that this cost/fees splitting aspect of the Agreement is substantively unconscionable as to her individual claims. While Pamela asserted a claim for a violation of the Elder Abuse Act as Lucille's successor in interest, a claim not at issue in this appeal, she has not made such a claim against the Capistrano defendants in her individual capacity. Furthermore, in the limited context of evaluating the substantive unconscionability of the Agreement, she makes no argument on appeal about her own financial ability to proceed in arbitration and does not otherwise argue the Agreement's costs provision is substantively unconscionably as to her individual claims.

For these reasons, Pamela failed to carry her burden of establishing the Agreement was substantively unconscionable as to the claims she brought in her individual capacity. (See *Pinnacle, supra,* 55 Cal.4th at p. 247 ["party resisting arbitration bears the burden of proving unconscionability"].)

IV.

WE REMAND FOR CONSIDERATION OF PAMELA'S OTHER ARGUMENTS RAISED IN OPPOSITION TO THE PETITION

Because the Agreement was not shown to suffer from substantive unconscionability, the trial court erred by denying the petition on the ground the Agreement was unenforceable as unconscionable with respect to Pamela's

17

individual claims. (See *Pinnacle, supra*, 55 Cal.4th at p. 247 ["both procedural unconscionability and substantive unconscionability must be shown"].) Having found the Agreement to be unenforceable as unconscionable, the trial court did not reach the other arguments asserted by Pamela for the denial of the petition as to her individual claims. At the hearing on that petition, the trial court stated: "[W]e don't ever get to whether the FAA and all those other matters come into play because, as indicated, it's based on the unconscionability issue." We therefore remand the matter to the trial court to consider the other arguments raised by Pamela in opposition to the petition.

DISPOSITION

The order denying the petition to compel arbitration as to Pamela's individual claims is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellants shall recover their costs on appeal.

MOTOIKE, ACTING P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.

18